THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
    THOMAS FERETTI, Appellant.

First Department, February 11, 1982

### APPEARANCES OF COUNSEL

*Andrew E. Abraham* of counsel (*William E. Hellerstein,* attorney), for appellant.

*Alexandra Valicenti* of counsel (*Billie Manning* and *Philip Foglia* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

Defendant Thomas Feretti was convicted after a jury trial of robbery in the first degree for his complicity as the getaway driver in the robbery of a supermarket manager making a night bank deposit. Proof of guilt was strong and the conviction should not be disturbed. We take critical note, however, of the prosecutor's repeated efforts to show the existence of a prior relationship between defendant, who lived just 10 blocks from the crime scene, and two of the detectives investigating the crime. Except for an initial denial of any involvement, defendant admitted during questioning, as he did in his trial testimony, that he had driven the two robbers to the bank and waited for them,

according to their instructions, a few blocks away. He also admitted driving one of the robbers from the scene. His defense was that he did not know that a robbery was planned, and that he never joined the criminal enterprise as an accomplice.

In a pretrial *Huntley* hearing, Detective Roge had informed the court that he knew defendant from a prior arrest two months earlier for possession of stolen property. Although the specific arrest was never mentioned at trial, the prosecutor constantly reiterated the theme that defendant was known to Detectives Roge and Cohen. In her opening she told the jury "[a]nd you'll hear Detective Roge testify that he knew the name Feretti * * * And you'll hear Detective [Roge] testify that he'd seen defendant in this case on prior occasions, he knew the defendant and he knew the car." The prosecutor noted that Detective Cohen spoke to defendant at the precinct because he "knew this young man."

On their direct examinations, the prosecutor repeatedly elicited the fact that each officer had known defendant prior to the incident. Roge was even permitted to testify that from a prior conversation with defendant he had learned that defendant had purchased the car in question on Boston Road, surely a matter of no legally probative worth. Cohen testified, over objections, that the incident stood out in his mind because "I know Thomas Feretti." After defense counsel had elicited from Detective Cohen that he had not taken any notes of his station house conversation with defendant nor spoken to anyone about it until one week before trial, which took place one year after the incident, the prosecutor, on redirect examination, asked Cohen "[o]n how many of these occasions did you actually know the defendant prior to giving him [*sic*] a statement?" After defendant's motion for a mistrial was denied the court admonished the prosecutor: "Counsel, he's already indicated he knew the defendant before this occasion. How many times does he got to say this?" When the prosecutor asked Detective Cohen why the case stood out in his mind Cohen replied "[b]ecause of my relationship with the defendant." Needless to say, this relationship was

never explained in terms of any social context. Nor could it be.

During the course of defendant's cross-examination the following occurred:

"Q. You knew Detective Cohen before, didn't you?

"A. Yes.

"Q. Isn't it a fact that you had a raport [sic] with Detective Cohen?

"A. Raport [sic], would you break that down?

"Q. ... withdrawn.

Well, Detective Cohen ever do you a favor in the past?

"A. No, never.

"Q. Never did you a favor in the past?

"A. Favor"

After an objection was sustained the prosecutor repeated:

"Q. Isn't it a fact, Mr. Feretti, that you knew Cohen?

"A. I answered that question yes."

To a limited extent some evidence that Detective Roge knew defendant before the incident was essential inasmuch as Roge testified that when he discovered that the getaway car was registered to a member of the Feretti family, he recalled having earlier seen defendant walking in the neighborhood and proceeded to find and question him. Perhaps too, evidence of a prior relationship might be relevant, as the People suggest, to show why defendant would "co-operate" with these officers when they questioned him. But such limited relevancy hardly justifies the prosecutor's emphasis on this aspect of the case and the host of questions on the subject. We can only conclude that these questions were intended to suggest that defendant had been previously arrested or, at the very least, was a known troublemaker in this particular precinct.

The People's explanation that the jury could just as easily have inferred that defendant might have been known to the local police as a crime victim, or as someone involved in police-community affairs, or because, as he testified, he had taken and passed a police department civil

service examination, does not withstand scrutiny. Had such a relationship existed defendant would have been only too pleased to show it, not only to rebut any unfavorable inference from the prosecutor's questions, but for any other positive effect it might have in the eyes of the jury. The plain fact is that this evidence was offered with the knowledge that defendant could offer no legitimate explanation of the relationship, in the absence of which the adverse inference would inevitably flow.

The Code of Professional Responsibility provides: "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." (EC 7-13; see Code of Professional Responsibility, Canon 5; *Berger v United States,* 295 US 78.) "[A] prosecutor must be mindful not only of his duty to the People, but also of his duty to the defendant in insuring an untrammeled fair trial." (*People v Nunez,* 74 AD2d 805, 806.) The matters of which we take note are undoubtedly the product of overzealousness. This does not, however, justify conduct which tends to undermine the ends of justice. Zealous advocacy must be tempered by self-discipline.

We have examined defendant's other contentions and find that, while he may not have received a perfect trial, the errors were not of such magnitude, in light of the evidence, as to deprive defendant of his constitutional right to a fair trial. (*People v Crimmins,* 36 NY2d 230, 238.)

Accordingly, the judgment, Supreme Court, Bronx County (SILBERMANN, J.), rendered September 18, 1979, convicting defendant of robbery in the first degree and sentencing him to an indeterminate term of imprisonment having a maximum of seven years, should be affirmed.

KUPFERMAN, J. P., SULLIVAN, LUPIANO, FEIN and LYNCH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on September 18, 1979, unanimously affirmed.