■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY PEREZ, Appellant.—Appeal by the defendant from a

judgment of the Supreme Court, Queens County (Dufficy, J.), rendered June 18, 1985, convicting him of burglary in the second degree and criminal mischief in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

On February 26, 1983, complainant Eula Lee Wade went to sleep at midnight and, at 3:15 A.M., was awakened by a noise. She testified that she saw a figure through her bedroom door, which was partially open. She switched her bedside lamp on and saw the intruder come through the door, and he ran over toward the bed. The man was wearing black pants and a black jacket and carrying a large cloth sack. She further testified that the intruder was in the room approximately two minutes.

The afternoon following the incident, Detective Keevan came to the Wade home with a book of photographs. The defendant's photograph was in the array, and the complainant was almost certain of the defendant's identification but was not "a hundred per cent" sure. On March 20, 1983, Detective Keevan again visited the complainant and showed her six photographs including one of the defendant, and she still could not make a positive identification.

On June 7, 1983, Police Officer Reynolds observed the defendant, whom he had known for five years, in a park not far from the Wade house. He picked up the complainant at her home and drove her to the park where she identified the defendant who then evaded arrest and turned himself in three weeks later. The complainant later identified the defendant in a lineup and in court.

In his defense, the defendant testified that he was not the intruder in the Wade home on the morning of February 26, 1983. He stated that he was at a birthday party on the evening of February 25, 1983, at a friend's house, got very drunk and left the party on February 26 between 4:30 and 5:00 A.M. and was driven home.

In this single-witness identification case, the judgment of conviction must be reversed because of multiple errors which occurred during the course of the trial which combined, deprived the defendant of a fair trial.

Prior to the trial, in response to a *Sandoval* motion, the trial court ruled, *inter alia,* that the prosecutor could not mention the defendant's youthful offender adjudication of May 5, 1979, involving a stolen skateboard, but permitted him, on cross-examination, to inquire about the underlying facts.

Initially, the prosecutor took unfair advantage of an obvious inadvertent mistake by the defendant. Although the prosecutor was well aware, from the defendant's record of prior convictions which was in his possession, that the defendant had been adjudicated a youthful offender only in 1979, at which time his photograph became available to law enforcement authorities, he pursued a line of questioning on cross-examination which raised the inference that the defendant was involved in two criminal incidents, namely, in 1977 and 1979. Over objection, the prosecutor was permitted to confuse the defendant at the risk of misleading the jury in this regard, as follows:

"Q In 1977, this business with the skateboard happened, right?

"A I believe it was '79.

"Q Wait a minute. You said it was when you were fifteen years old, right?

"A Right.

"[The Defense Counsel]: Judge, let's not be argumentative, please.

"[The Prosecutor]: I'm not being argumentative. I am asking him.

"Q Was it when you were fifteen years old?

"A Yes.

"Q So that was 1977, right?

"A Yes.

"Q So, let's get into 1979 then. Did you possess stolen property pursuant to a robbery in 1979?

"[The Defense Counsel]: Objection, Your Honor. I move to strike that. May we have a sidebar?

"THE COURT: We just completed one, Counsel.

"[The Defense Counsel]: [The Prosecutor] I think, knows better than that.

"[The Prosecutor]: I don't know what I know better than.

"Q So, what's the story, Anthony?

"A Yes.

"Q Yes, you did?

"A Yes * * *.

"Q Well, before you said you only had your picture taken by the police once when you were fifteen years old which would be 1977; is that correct?

"A I believe it was '79. I'm not sure really.

"Q Well, you were fifteen years old in 1977, right?

"A Yes.

"Q So, what's 1979? You were seventeen years old then.

"A I'm not too sure. It was a long time ago * * *.

"Q I show you Defendant's I. Take a look at that first picture there. Is that the one they took of you in 1977?

"A I'm not sure.

"[The Defense Counsel]: Objection, your Honor. This is beyond the scope of direct examination.

"The Court: Objection overruled.

"Q You're not sure?

"A I'm not sure."

The door was opened to this line of inquiry by the defense attorney who, in his direct examination of the defendant, attempted to reveal to the jury the underlying acts of the youthful offender adjudication (see, e.g., People v Hardwick, 122 AD2d 165, lv denied 68 NY2d 813; People v Roseman, 78 AD2d 878). He did this by asking the defendant whether his photograph was ever taken by the police department. The prosecutor, however, exceeded the permissible area of invited response in his deliberate attempt to mislead the jury to infer that the defendant had two, rather than one, prior adjudications. The prosecutor's actions were similar to those condemned in People v Hamilton (121 AD2d 176, 179), wherein the defendant misstated an alibi date, and the prosecutor intentionally took advantage of the defendant's inadvertent mistake "to confuse the defendant and to ridicule him on the basis of a pretended belief that the defendant had given manifestly absurd testimony". Since this is far from an overwhelming case, we cannot consider this error to be harmless.

The defendant was further prejudiced by testimony bolstering the complainant's identification. In the People's case, Police Officer Reynolds testified that he asked the complainant to accompany him to a park where the defendant was present. Over objection, the police officer was permitted to testify that the complainant identified the defendant as the intruder in her house. This testimony went beyond the "implicit" testimony condemned by our courts (see, e.g., People v Holt, 67 NY2d 819; see also, People v Johnson, 57 NY2d 969; People v Bowman, 122 AD2d 849; People v Vasquez, 120 AD2d 757).

Where, as here, the conviction is based upon identification testimony by a single witness who made a brief observation of the assailant under less than ideal circumstances "any error

which is apt to enhance the weight of such testimony may not be disregarded as merely technical in nature" *(People v Vasquez, supra,* at 758). Thus, on these facts, this bolstering error cannot be considered harmless *(see, People v Johnson, supra,* at 970; *People v Mobley,* 56 NY2d 584, 585).

Finally, the trial court's sole specific charge relating to the alibi defense consisted of the following sentence: "In addition, the Defendant maintains that he was not in the vicinity of 641 Beach 66th Street, Queens County, New York [Wade's house] at or about the time the crime was committed, whereupon he must be found not guilty of all charges".

The statement given to the jury was tantamount to no alibi charge at all. In *People v Victor* (62 NY2d 374, 378), the Court of Appeals clearly stated that in a case involving an alibi defense, "the People have the burden of disproving an alibi beyond a reasonable doubt, and a Judge must unequivocally state that burden in the jury charge". Further, the court did not charge that the People had the burden of proving defendant guilty by the same standard, even if the alibi was not believed *(see, People v Ciesluk,* 106 AD2d 514). In this case, the defense counsel failed to request this alibi charge or except to the lack thereof, and the issue is unpreserved. In such a situation, this court has stated that we would not consider the issue in the interest of justice (1) where there is strong evidence of the defendant's guilt, and (2) where the trial court's instructions, taken as a whole, properly instruct the jury that the People bear the burden of proof *(see, People v Colon,* 122 AD2d 151, *lv denied* 68 NY2d 810; *People v Moya,* 115 AD2d 769, 770; *People v Beckles,* 115 AD2d 749, 750). In this case, while the charge, read as a whole, did not shift the burden of proof, the evidence of guilt was not strong, and there was a close question of identification. In view of the fact that the defendant's guilt hinged on the sole identification by complainant Wade and the credibility of the defendant in offering an alibi defense, the total absence of any definitive charge on alibi, combined with the other errors present, requires reversal, in the interest of justice.

The remaining contentions of the defendant were either unpreserved for our review or are without merit. Mangano, J. P., Kunzeman, Kooper and Spatt, JJ., concur.