■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALDO NEGRON, Also Known as GERARDO NEGRON, Appellant.—Judgment, Supreme Court, Bronx County (Bonnie Wittner, J., at *Sandoval* hearing; Nicholas Figueroa, J., at trial and sentence), rendered January 28, 1988, convicting defendant, after a jury trial, of two counts of robbery in the first degree and imposing concurrent sentences, as a second felony offender, of 6 to 12 years' imprisonment, unanimously reversed, on the law and in the interest of justice, and the matter is remanded for a new trial.

Because the issue of defendant's guilt was extremely close (although still within the province of the jury to determine), we find that the prosecutorial misconduct disclosed on this record was prejudicial to defendant and deprived him of a fair trial.

Two of the prosecutor's excesses did not rise to the level of reversible error in the context of this trial. The first (a calculated evasion of the trial court's *Sandoval* ruling limiting the information pertaining to defendant's prior criminality the jury was permitted to receive) consisted of an improper reference to the use of an alias by defendant in prior transactions with the police *(People v Dowdell,* 88 AD2d 239). This stratagem, however, did not end up adding much to the evidence properly before the jury that defendant had been convicted of a felony, and, as brought out by defendant himself, he was on parole at the time of his arrest in this case.

Furthermore, this misconduct was also promptly corrected by the Trial Judge in a manner that has been held curative of this species of error *(People v Sellars,* 74 AD2d 551, 552). A second departure from recognized prosecutorial norms occurred during the cross-examination of defendant, where the Assistant District Attorney told defendant that a particular exhibit "proves you are a liar, doesn't it?", and compounded this regrettable conduct by the rhetorical aside which followed: "I will let the jury decide that." While the tactic of branding defendant a liar in a criminal trial has been condemned *(People v Ortiz,* 125 AD2d 502, 503; *People v Pressley,* 93 AD2d 665, 670), the prejudicial impact was palliated because here, too, the court promptly intervened *sua sponte* with an appropriate direction not to make "such comments". It is also true that defense counsel may have initiated the acrimonious tone of the trial by tenaciously questioning the complainant (like defendant, he had previously been convicted of armed robbery and had served a State prison sentence) as to whether the complainant was a liar and a cheat, thus launching a credibility contest which, as the Court of Appeals has observed, frequently invites "excesses and improprieties" *(People v Galloway,* 54 NY2d 396, 398). Be that as it may, we would simply remind the representatives of the People that "goading by defense counsel will not justify a prosecutor's departure from the obligations of the sensitive role he plays" *(People v Galloway, supra,* at 398-399).

What cannot be condoned by us is a third prosecutorial impropriety which compromised the integrity of the entire trial. At some time in the course of events, this Trial Assistant made an indefensible decision to accuse defendant (and squarely implicating his counsel) of fabricating his defense only after hearing the complainant and the People's witnesses testify. This defense, which had some strong evidentiary support, was that defendant and complainant had a prior relationship before the alleged robbery, and that the complainant was maliciously motivated by defendant's rejection of complainant's sexual advances falsely to manufacture the entire criminal incident. This contention went to the heart of the defense case, because complainant testified that he learned defendant's identity on the last of three wholly accidental postcrime confrontations when defendant negligently dropped his wallet containing his identification and parole papers. Defendant, on the contrary, testified that he mistakenly left these incriminating items after a visit to complainant's apartment at the latter's express invitation. Knowing full well that

defendant had asserted this contention of a prior relationship at a pretrial hearing *four days before the trial commenced,* as well as at the *Sandoval* hearing before any testimony was taken, the prosecutor maintained both in an aggressive cross-examination and in his summation that the prior relationship defense was perjuriously tailored only after hearing the complainant's testimony. This aspect of the People's summation was particularly offensive, since the argument made, over objection, was that defendant had abandoned an earlier mis-identification defense, when he thought an alibi stance would not pass muster, in favor of the supposedly sham defense crafted as an afterthought when the People rested. For this grossly improper conduct, a reversal is mandated *(People v Whalen,* 59 NY2d 273, 280-281; *People v Jackson,* 143 AD2d 363; *People v Rosa,* 108 AD2d 531, 538). Concur—Murphy, P. J., Carro, Milonas, Asch and Wallach, JJ.