THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TITO GARCIA, Appellant.

First Department, July 18, 1991

APPEARANCES OF COUNSEL

*Frank Loss* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Donald J. Siewert* of counsel (*Robert M. Morgenthau, District Attorney,* attorney), for respondent.

**OPINION OF THE COURT**

ELLERIN, J.

At issue on this appeal is the propriety of the prosecutor's cross-examination which sought to impeach the defendant with his supposed dishonesty in having entered pleas of not guilty at arraignments in prior cases in which he ultimately pleaded guilty.

At trial, undercover Police Officer Joseph Connors testified to the facts of the "buy and bust" operation that resulted in defendant's arrest. Officer Connors had approached defendant on East Second Street at 11:00 A.M. on April 3, 1989 and asked for "two". Defendant told him to put his money away because there were police officers in the area, but then handed him two glassine envelopes stamped "Brainbuster", in exchange for $20. After Connors left the scene, defendant was arrested by backup officers and was found to have in his possession $324 in cash, a single glassine envelope which was also marked "Brainbuster" and two glassine envelopes marked "Yoya". All of the envelopes were submitted for testing and, while those marked "Brainbuster" were found to contain heroin, the two marked "Yoya" did not contain a controlled substance.

Defendant testified on his own behalf. He acknowledged that Connors had approached him with money in hand and that he had told Connors to put his money away. Defendant stated that the glassine envelopes which he then sold to Connors did not contain heroin, but were "dummies", filled with milk sugar. While he admitted that he did have some heroin, he stated that he chose to pass off the fake drugs to the officer because he felt that the officer was not acting like a drug user and because he wanted to keep the heroin he had for his own use.

Defendant also testified that between March 1982 and April 1986 he had been convicted of various felonies, to each of which he had entered a plea of guilty prior to trial. Defense counsel then asked, without objection, why defendant had pleaded guilty in those cases and defendant answered, "I was guilty of them, sir." When asked why he had not pleaded guilty in the instant case, defendant answered, "[B]ecause I'm not guilty of selling drugs, sir, I'm guilty of selling no controlled substance. It wasn't drugs that I gave that man."

On cross-examination, the prosecutor questioned defendant about each of his prior convictions, in accordance with the court's pretrial *Sandoval* ruling. After eliciting such permissible information, the prosecutor asked defendant whether he recalled being arraigned on the charges which led to those prior convictions, to which defendant replied in the affirmative. Over defense objection, the prosecutor was then permitted to ask whether defendant had ever pleaded not guilty in those cases, and defendant eventually answered that he had, in fact, pleaded not guilty at arraignment. At that point the prosecutor commented, "So you were lying in court." After extensive argument, defense counsel's objection to this line of questioning was again overruled and the prosecutor was permitted to ask, "[S]o when you pled not guilty in front of a judge in those cases you were not telling the truth?" After several repetitions of that question, defendant eventually admitted that this was so. Defense counsel's objection was again overruled.

 We find that this line of questioning was so fundamentally unfair that it deprived defendant of a fair trial and compels reversal of his conviction.

It is well established that a prosecutor bears a duty, not only to the People, but " 'to the defendant in insuring an untrammeled fair trial.' " *(People v Feretti,* 85 AD2d 40, 43, quoting *People v Nunez,* 74 AD2d 805, 806.) One of the most important obligations of the prosecutor is to refrain from misleading the jury about the true facts. *(People v Whalen,* 59 NY2d 273, 280-281; *People v Perez,* 127 AD2d 707, 710; *People v Negron,* 161 AD2d 537.) In this case, the tenor of the prosecutor's questioning of the defendant could not help but mislead the jury concerning the true import of defendant's prior pleas of not guilty.

There is certainly no question that a plea of not guilty, entered at arraignment, is not the equivalent of a factual assertion of innocence. *(United States v Norris,* 910 F2d 1246, 1247; *Wood v United States,* 128 F2d 265, 273; *see also, United States v Xheka,* 704 F2d 974; *Driscoll v United States,* 356 F2d 324, 327-328, *vacated on other grounds sub nom. Piccioli v United States,* 390 US 202.) Rather, it is merely the device by which a person accused of a crime informs the prosecutor and the court that he or she intends to put the government to its proof and preserves the right to defend *(Wood v United States, supra; Ezzard v United States,* 7 F2d 808). As such, it automat-

ically constitutes a denial of every allegation in the indictment and concommitantly imposes upon the People the burden of proving every fact and element of the crime charged beyond a reasonable doubt (CPL 220.40; Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 220.40, at 287). Thus, a plea of not guilty in a criminal case is no more than a demand that the People prove their case and cannot be said to have any independent evidentiary significance. Indeed, it is only a judgment of conviction in a criminal case that has any significance regarding the truth of the underlying facts upon which the conviction is rendered (see, S. T. Grand, Inc. v City of New York, 32 NY2d 300) in distinction to an acquittal which is accorded no evidentiary standing in a subsequent civil suit (see, Schindler v Royal Ins. Co., 258 NY 310).

■ The lack of evidentiary significance incidental to a plea of not guilty is crucial to a meaningful exercise of a defendant's constitutional right against self-incrimination. (US Const 5th, 14th Amends; NY Const, art I, § 6.) A defendant's constitutional right to plead not guilty places an "absolute limit" on the use of such a plea as evidence against the defendant. (United States v Norris, 910 F2d 1246, 1247; see also, People v Townsend, 134 AD2d 730; CPL 220.10 [1]; 340.20.) That a plea is merely a device, rather than a factual assertion of innocence, is emphasized by the legislative mandate requiring a defendant against whom an indictment is pending to enter a plea at arraignment (CPL 210.50). Clearly, "[i]f the plea were testimonial or evidentiary, the court would have no power to demand it." (Wood v United States, supra, at 274.)

■ While the People do not contend that a prior plea of not guilty which is later contradicted by a guilty plea is always admissible to impeach a defendant who testifies, they argue that in this case defendant's direct testimony opened the door to such inquiry on cross-examination (see People v Melendez, 55 NY2d 445). We cannot agree that the kind of cross-examination here engaged in can be justified under any "opening the door" theory.

On direct, the defendant, obviously anticipating cross-examination on his criminal record, not only testified concerning that record but tried to obviate its impact on the jury's evaluation of his credibility by implying, in substance, that when he was guilty of a crime he had pleaded guilty before trial. Defendant may well have been hoping that the jury

would draw the very dubious inference that his failure to plead guilty in the instant case was some proof of innocence.

At most, testimony of this type by a defendant could arguably open the door to cross-examination which would truly refute it. For example, such testimony has been held to open the door to questioning that seeks to demonstrate that a prior guilty plea was motivated by factors other than honesty, such as the overwhelming level of proof in the prior case or the favorable plea bargain received (see *Middleton v United States,* 401 A2d 109 [DC App]). Similarly, such testimony might open the door, in a limited fashion, to otherwise inadmissible evidence that the defendant had entered a plea of guilty in the case at bar which had subsequently been withdrawn. *(Cf., People v Perez,* 118 AD2d 431.) Of course, caution must always be exercised to insure that the prejudicial effect of the impeachment evidence does not outweigh its probative value.

In this case, the prosecutor clearly exceeded any permissible area of invited response in a manner that could easily mislead a lay jury. *(See, People v Perez,* 127 AD2d 707, 710, *supra.)* The evidence brought out on cross-examination here had no true probative value at all. Contrary to the prosecution's argument, the import of defendant's testimony was not to suggest that his innocence in this case could be inferred from the fact that he entered a plea of not guilty at arraignment but, rather, that his innocence could be inferred from his ultimate decision to go to trial. Thus, the fact that defendant had pleaded not guilty at his arraignment in prior cases in which he later admitted that he was actually guilty was worthless to rebut the proposition which defendant had apparently sought to establish, i.e., that if he were guilty, he would, as he had done in prior cases, have pleaded guilty rather than ultimately proceed to trial.

While those who are experienced in the legal system and knowledgeable in criminal law may be expected to be familiar with the constitutional implications and evidentiary limitations of a not guilty plea at arraignment, it is unlikely that lay jurors would be similarly versed. *(Cf., People v Conyers,* 52 NY2d 454.) In that setting, the repeated questioning of defendant regarding his not guilty pleas at arraignments in prior cases and the prosecutor's persistence in seeking to obtain an affirmative acknowledgment by defendant that when he did so "you were lying in court" and "were not telling the truth" constituted an insupportable attack upon defendant's constitu-

tional right against self-incrimination to enter such a plea and deprived him of a fair trial. The nature and import of the questions could only lead the jury to believe that defendant's not guilty pleas at prior arraignments were calculated and knowing "lies" on his part and that, therefore, he was worthy of no belief at all. This was further exacerbated by the prosecutor's emphasis on the fact that by pleading "not guilty" the defendant had lied "in court * * * in front of a judge", suggesting that defendant's behavior had been tantamount to perjury. To permit the exercise of one's constitutional right against self-incrimination by way of a plea of not guilty to be so misused and distorted would be to render that right meaningless.

■ The substantial prejudice to defendant by the unfair implications of this line of inquiry regarding his prior not guilty pleas was exacerbated by other questions which forced the defendant to characterize the police officers as liars. Such questioning is, of course, highly improper (People v Rodriguez, 62 AD2d 929; People v Bryant, 60 AD2d 810). While no appropriate objection was taken, since we conclude that this line of questioning contributed to the denial of a fair trial to defendant, we have reviewed these questions in the interest of justice. (CPL 470.15 [6] [a].)

■ The errors herein discussed cannot be dismissed as harmless since, under the circumstances of this case, there remains a reasonable doubt that the jury would have convicted defendant had these improper lines of questioning not been pursued. (See, United States v Norris, supra; People v Crimmins, 36 NY2d 230.) The verdict here rendered makes apparent that the jury did not totally reject defendant's testimony, since it did not convict him of a completed sale, but only of possession with intent to sell. On the other hand, it is clear that the jury did not totally accept defendant's testimony, since that testimony exculpated him from intending to sell the drugs in his possession, which he claimed were solely for his own use. In that context, the question of defendant's credibility was a close one and took on critical importance. Generally, in review of matters of credibility, "[g]reat deference is accorded to the factfinder's opportunity to view the witnesses, hear the testimony and observe demeanor." (People v Bleakley, 69 NY2d 490, 495.) Where, as here, the errors complained of were directly related to the jury's ability to fairly evaluate defendant's credibility, it is not possible to say

that they were not the deciding factor in causing the jury to disbelieve the defendant's testimony.

Accordingly, the judgment of the Supreme Court, New York County (Martin Evans, J.), rendered on September 19, 1989, convicting defendant after a trial by jury, of criminal possession of a controlled substance in the third degree and sentencing him to an indeterminate term of imprisonment of 10 to 20 years should be reversed, on the law, and as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

CARRO, J. P., ROSENBERGER, KASSAL and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, rendered on September 19, 1989, unanimously reversed, on the law, and as a matter of discretion in the interest of justice, and the matter remanded for a new trial.