■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CATHERINE P. BEAUDOIN, Appellant. [603 NYS2d 926] —Mahoney, J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered April 5, 1991, upon a verdict convicting defendant of the crime of murder in the second degree.

The murder conviction at issue in this appeal stems from the September 30, 1989 drowning death of defendant's 14-month-old son, Stephen. A review of the record reveals that while defendant initially reported to police that Stephen had been abducted, when confronted with the fact that his body had been found in a pond in Rensselaer County, she recanted her story and ultimately signed a statement stating that she became upset by Stephen's crying, stopped the car in which they were riding across from a pond, carried Stephen to it, placed him in the water, walked away and watched him drown. Following her arrest, defendant was indicted on two counts of murder in the second degree.

At trial defendant changed her story, testifying that she pulled the car over because she did not feel well and got out with Stephen to sit by the pond for a while. When she had put Stephen down by the pond, she then went back to the car to get some milk and cigarettes and en route experienced an epileptic seizure and lost consciousness. When she regained consciousness, she saw Stephen in the pond. Rather than attempt to rescue him or summon help, however, defendant stated that she went to a local market where she made up the abduction story. Following conclusion of the proof, the jury exonerated defendant of the intentional murder charge but found her guilty of depraved indifference murder. She was subsequently sentenced to an indeterminate term of incarceration of 25 years to life. This appeal ensued.

Defendant's principal argument on appeal is that County Court committed reversible error in its charge relative to her epilepsy defense; more specifically she argues that County Court failed to indicate that the People had the burden of disproving the defense and misstated defendant's position with respect thereto. While defendant concedes that no objection was lodged to either of these claimed errors, she argues that under the authority of *People v Patterson* (39 NY2d 288, 295, *affd* 432 US 197) they are reviewable as a matter of law. We disagree.

In *People v Patterson (supra),* the Court of Appeals carved out a narrow exception to the general rule requiring objection

in order to preserve trial errors for appellate review. This exception, which permits review of errors that "affect the organization of the court or the mode of proceedings proscribed by law" *(supra,* at 295), applies to situations where the court lacked jurisdiction, the right to trial by jury was disregarded or where there was a fundamental, nonwaivable defect in the mode of procedure *(supra).* Clearly, the alleged mischaracterization of defendant's defense during the marshaling of evidence portion of the charge, which forms the basis of one of defendant's challenges, does not fall within the ambit of the exception. With regard to the burden of proof issue, while a charge that contains express burden-shifting language has been held to come within the purview of the exception *(see, People v McKenzie,* 67 NY2d 695, 697), a review of this charge reveals no express burden-shifting language. Rather, as defendant concedes, the only perceived defect is that the charge assertedly is *susceptible* to an interpretation that the burden of proof of this nonstatutory defense is on defendant. This Court has consistently held that such situations do not come within the exception *(see, People v Andrews,* 109 AD2d 939, 941; *see also, People v Batten,* 141 AD2d 746, 748, *lv denied* 72 NY2d 915; *People v Roundtree,* 140 AD2d 884, *lv denied* 73 NY2d 790; *People v Perez,* 127 AD2d 707, 711; *cf., People v Tucker,* 174 AD2d 1028 [4th Dept], *lv denied* 78 NY2d 1015; *People v Jackson,* 167 AD2d 893 [4th Dept]).

Nor, upon review, do we believe that reversal in the interest of justice is warranted. While County Court's charge could have been made more explicit by inclusion of an unequivocal statement that the People have the burden of disproving this epilepsy defense, when read as a whole it more than adequately conveyed the law to the jury. With respect to County Court's mischaracterization of defendant's theory of defense, it does appear that the court erred when in marshaling the evidence it stated defendant's position to be that she was suffering from an epileptic seizure "at the time [Stephen] was placed in the pond". In fact, defendant claimed that she did not place Stephen in the water and because of the seizure did not know how he came to be in the pond. However, we are unpersuaded that any prejudice resulted from this isolated and minor mischaracterization, especially in view of the implausibility of the defense and the overwhelming evidence of guilt.

We have reviewed the remaining contentions and find them to be similarly unpreserved for review or lacking in merit. Turning to the ineffective assistance of counsel claim, even

considering counsel's failure to object to County Court's error in marshaling the evidence, viewing the record as a whole we are satisfied that defendant received meaningful representation. Defense counsel engaged in extensive pretrial motion practice, effectively cross-examined the People's witnesses, presented an expert epilepsy witness on defendant's behalf and, in general, performed as well as could be expected in light of the extremely strong evidence of guilt. Finally, even if we disregard the fact that the issue has not been preserved for review, we do not believe that the prosecutor's summation comments were so egregious as to warrant a new trial. While these remarks, namely, that defendant lacked a "mother's heart" and did not care about anyone other than herself, and the prosecutor's characterization of Stephen as the trusting child "laughing and smiling all the way to the pond", were certainly blunt and in some instances melodramatic, on balance we find them to be a fair comment on the evidence and not so egregious, under these circumstances, as to deprive defendant of a fair trial. Significantly, most if not all the comments had their genesis in defendant's own admissions at trial, namely, that she initially lied to police about Stephen's abduction in an effort to avoid prosecution and that she saw Stephen lying in the pond and just walked away, making no attempt whatsoever to help him or to obtain help, in certain language contained in her signed statement (i.e., defendant's characterization of Stephen as being "happy" and thinking it was "fun" as she brought him to the pond) and in comments she made at the station house.

Yesawich Jr., J. P., Crew III, White and Casey, JJ., concur. Ordered that the judgment is affirmed.