■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VIRGINIA MARTIN, Also Known as YVONNE CRUZ, Appellant.— Judgment, Supreme Court, New York County (Frederic S. Berman, J.), entered on or about April 26, 1989, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, for which she was sentenced as a second felony offender to concurrent indeterminate terms of 4-½ to 9 years, unanimously reversed, on the law and as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

This buy and bust conviction arises out of defendant's alleged sale to an undercover officer of two vials of crack cocaine for ten dollars. Arrested immediately by back-up officers, defendant was not found in possession of the prerecorded buy money, but search of her person disclosed four additional crack vials. Although the People's evidence was sufficient to sustain this conviction, we find that prosecutorial excesses deprived defendant of a fair trial, and we reverse and remand for a new trial on that ground.

In its pretrial *Sandoval* ruling, the trial court demonstrated commendable sensitivity to fair trial concerns.

Because the case involved the alleged possession and sale of narcotics, the court precluded the ADA from inquiring into any prior convictions, or their underlying facts, that had to do with defendant's use of drugs. Specifically, although the People were permitted to establish that defendant had been convicted of attempted petit larceny in June 1988 and were allowed to inquire into the facts of that crime, they were precluded from inquiring into the fact that defendant was found to be in possession of drugs when arrested on that charge. Likewise, although the People were permitted to establish appellant's prior conviction for bail jumping, to be excluded was the fact that the underlying charge was drug related. Questions pertaining to appellant's prior misdemeanor drug conviction were completely precluded.

Subsequently, the prosecutor sought to modify the ruling so as to permit him to reveal appellant's prior use of crack cocaine. He stated that if defendant sought to challenge her identification as the perpetrator by exploiting any significant weight gain from the time of her arrest to the time of trial (which the prosecutor attributed to the healthy jail regimen cutting off her drug supply), he urged such a contention by defendant would "open the door" for him to show "she used to [use] crack but doesn't any more since she has been in jail." The court emphatically denied this application.

The court's efforts were set at naught by the ADA when defendant took the stand in aid of her contention that she was a mere innocent bystander caught up in an illegal drug sweep. (This position was by no means untenable; the arresting officer described four police cars containing nine officers responding to the scene, and defendant's version was supported by the testimony of another arrestee seized at the same time.) Defendant's cross examination closed with the following crescendo:

"Q. Would it be fair to say that your way of dealing with

the criminal justice system has been in general to consistently lie whenever you were asked questions?

"MR. MOSCOTO [defense counsel]: Objection.

"THE COURT: I'll sustain an objection to the use of the word lie.

"Q. You constantly give false information when you have been arrested, haven't you?

"A. Yes.

"Q. You had some success with your methods, haven't you?

"A. No.

"Q. Well, you heard all these witnesses come in here over the past few days and say that they saw you selling crack. One of them said he bought crack from you, some of them said they recovered crack from your pocket.

"MR. MOSCOTO: Objection.

"THE COURT: Let's have the question.

"MR. MOSCOTO: Five questions in one.

"THE COURT: Pose a question, please, not a statement.

"Q. You thought that you could just come in here and tell all these jurors that it wasn't true and they would believe you; is that what you thought?

"A. It's not true.

"Q. *Have you supported yourself by selling crack over these past years?*" (Emphasis added.)

Although defense counsel's prompt objection was sustained, this Parthian shot by the prosecutor, at the close of the inquiry, without any objective other than the injection of pure prejudice, constituted a blatant and willful evasion of the letter and spirit of the prior *Sandoval* ruling and defendant's motion for a mistrial should have been granted. We are not satisfied that the prejudice was cured by the court's earlier instruction that questions standing alone, without answers, do not constitute evidence, an instruction never linked up with this incident. The error was compounded by the Assistant's repeated use of the word "liar" in describing defendant in summation, a practice which has been condemned *(People v Hudson,* 104 AD2d 157, 158; *People v Dowdell,* 88 AD2d 239, 247; *People v Ortiz,* 125 AD2d 502). Concur—Carro, J. P., Ellerin, Wallach, Kupferman and Kassal, JJ.