OPINION OF THE COURT
 

 Simons, J.
 

 Defendant, convicted of depraved mind murder and other charges after he attacked and strangled an acquaintance in her apartment, raises two principal issues on this appeal: (1) whether the affirmative defense of extreme emotional disturbance can be used to mitigate a charge of depraved mind murder
 
 (see,
 
 Penal Law § 125.25 [2]) and (2) whether evidence of a prior conviction that had been precluded by a pretrial ruling of the court was nonetheless properly used by the prosecution on cross-examination to impeach a defense witness. We conclude that the trial court was correct in refusing to charge the jury on the affirmative defense and in allowing cross-examination about the prior conviction and we therefore affirm.
 

 I.
 

 Delphi Cox, a 19-year-old Utica resident, was found dead in her apartment on June 3, 1990, the victim of multiple knife wounds and strangulation. According to testimony at trial, she and defendant had spent the previous afternoon and evening smoking crack cocaine and drinking beer. At least three times, defendant left the apartment to purchase more cocaine. Defendant testified that early in the afternoon Ms. Cox promised to have sex with him but when defendant later pressed his demand for sex, Ms. Cox refused. An argument ensued and, in a fit of anger, defendant picked up a kitchen knife and began chasing and stabbing her. After cornering her in a bathroom, he found an electrical cord and strangled her. Over the next few hours, defendant left the apartment twice, taking with him each time personal items owned by Ms. Cox to sell on the street for more drugs. The next day defendant asked an acquaintance to help him destroy the evidence by burning the building. He was arrested after the acquaintance notified police.
 

 Defendant was charged, in the alternative, with intentional
 
 *642
 
 murder (Penal Law § 125.25 [1]) and depraved mind murder (Penal Law § 125.25 [2]) as well as other counts. At trial, defendant’s principal contention was that he acted under extreme emotional disturbance, brought on by the victim’s refusal to have sex, and therefore was liable only for manslaughter and not murder
 
 (see,
 
 Penal Law § 125.25 [1] [a]; § 125.20 [2]). The court charged the jury that extreme emotional disturbance was an affirmative defense that could mitigate a charge of intentional murder to manslaughter, but declined to give the same charge on the depraved mind murder count. Relying on the plain language of Penal Law § 125.25, the court concluded that the Legislature had not authorized such a defense to depraved mind murder. The jury acquitted defendant of intentional murder and the lesser included charge of manslaughter and instead convicted him of depraved mind murder. The Appellate Division affirmed and leave to appeal was granted by a Judge of this Court.
 

 II.
 

 Penal Law § 125.25 defines three types of murder in the second degree: intentional murder (subd [1]), depraved mind murder (subd [2]) and felony murder (subd [3]). Only subdivision (1), dealing with intentional murder, contains a provision for mitigation of the charge by the affirmative defense of extreme emotional disturbance
 
 (see,
 
 Penal Law § 125.25 [1]).
 

 Despite this clear statutory language, defendant contends that extreme emotional disturbance is an affirmative defense to depraved mind murder as well as intentional murder. He notes that at common law "heat of passion” was a mitigating defense to both intentional murder and depraved mind murder and he reads New York’s original codification of criminal law in 1829 and subsequent statutes preceding the current version, enacted in 1965, as allowing heat of passion as a mitigating defense to depraved mind murder. Inexplicably, the pre-1965 statutes did not allow heat of passion to mitigate intentional murder. This "oversight”, defendant argues, explains the structure of the current homicide statute. According to his theory, the Legislature included the defense of extreme emotional disturbance — the successor concept to heat of passion — in the intentional murder subdivision as a way of emphasizing that it would apply forthwith to intentional murder, as it had at common law. But in doing so, defendant maintains, the Legislature did not intend to change the com
 
 *643
 
 mon-law understanding that the heat of passion defense would continue to apply to depraved mind murder. He points out that the relevant legislative history for the 1965 revision makes no mention of any intent to eliminate defenses relevant to the depraved mind statute. His view has been shared by at least one commentator
 
 (see,
 
 Gegan,
 
 More Cases of Depraved Mind Murder: The Problem of Mens Rea,
 
 64 St John’s L Rev 429, 448-461).
 

 Defendant’s historical argument is undercut by factual errors in its two essential premises. First, defendant’s assertion that New York law had always followed the common law and recognized heat of passion as an affirmative defense to depraved mind murder is incorrect. In fact, heat of passion was never an affirmative defense to depraved mind murder under prior New York statutory schemes. To the contrary, prior to the 1965 revision of the Penal Law, it was an
 
 element
 
 of the crime of manslaughter in the first degree
 
 (see,
 
 former Penal Law § 1050; L 1881, ch 676, § 189).
 
 [1]
 
 As with any statutorily defined element, it was the People’s burden to prove heat of passion to establish the commission of the crime
 
 (People v Peetz,
 
 7 NY2d 147, 152;
 
 People v D’Andrea,
 
 26 Misc 2d 95, 102;
 
 and see,
 
 Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 125.20, at 230 [1967 ed]). One of the principal motivations for changing the homicide article in the 1965 revision was to remove the burden of proving heat of passion from the People
 
 (see,
 
 Fourth Interim Report of State of NY Temp Commn on Revision of Penal Law and Criminal Code, 1965 NY Legis Doc No. 25, at 29-30). Thus, defendant’s suggestion that the relevant homicide statutes have historically reflected the common law of crimes, and should be interpreted in light of it, is belied by New York’s unique statutory history. Indeed, Denzer and McQuillan characterized the prior New York statutes as having "distorted and destroyed” common law in this area (Practice Commentary,
 
 op. cit.,
 
 at 230).
 

 Second, implicit in defendant’s argument is the assumption that heat of passion and extreme emotional disturbance are identical concepts. Thus, he contends the common law pertaining to heat of passion should be used to interpret and apply
 
 *644
 
 extreme emotional disturbance. Our case law does not support that proposition. As we explained in
 
 People v Patterson
 
 (39 NY2d 288, 302-303,
 
 affd
 
 432 US 197): "The opportunity opened for mitigation [by the extreme emotional disturbance defense] differs significantly from the traditional heat of passion defense.” The older concept applied only to immediate actions in which "hot blood” prevented reflection. The newer concept embodies the more sophisticated psychological understanding that a significant mental trauma may not be immediately apparent, yet may diminish a person’s mental capacity in ways relevant to society’s determination of criminal culpability
 
 (id.,
 
 at 303). More significantly, we stated that heat of passion at common law negated intent — an essential element of the crime — whereas a successful claim of extreme emotional disturbance did not
 
 (id.,
 
 at 302). The extreme emotional disturbance defense, unlike a heat of passion theory, recognizes that defendant intended to kill his victim but, by legislative prerogative, the accused is viewed as being less blameworthy. Thus, when the Legislature eliminated heat of passion from the homicide statutes and included extreme emotional disturbance, the change was more than one of superficial terminology. Though the two concepts share a common legal history, the law applicable to heat of passion need not be, nor should it be, used to give meaning to extreme emotional disturbance.
 

 In the final analysis, then, defendant’s argument is constructed on the mistaken beliefs that heat of passion was always an affirmative defense to depraved mind murder in New York law, that extreme emotional disturbance is the same as heat of passion and that the Legislature intended extreme emotional disturbance to be a mitigating factor to depraved mind murder. Because the first two propositions are incorrect, there is no basis for finding the third. There may be sound reasons for the Legislature to extend the extreme emotional defense beyond intentional murder to depraved mind murder
 
 (see,
 
 Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 125, at 492; 2 LaFave and Scott, Substantive Criminal Law § 7.10, at 253), but it has not made that policy choice, either expressly or impliedly. Penal Law § 125.25 has been the law of New York, with only minor changes, for more than 25 years and the Legislature has not chosen to broaden application of the extreme emotional disturbance defense.
 

 Finally, the Legislature’s failure to include the affirma
 
 *645
 
 tive defense in the depraved mind murder statute does not raise concerns about due process, for the People remain responsible for proving the fundamental elements of
 
 mens rea
 
 and
 
 actus reus
 
 beyond a reasonable doubt
 
 (Patterson v New York,
 
 432 US 197,
 
 supra; compare, Mullaney v Wilbur,
 
 421 US 684).
 

 In light of this legislative history, the clear language of the statute and the absence of a constitutional due process issue, we have no basis for extending the extreme emotional disturbance defense to depraved mind murder.
 

 III.
 

 As a second issue, defendant alleges that the prosecutor committed error at trial when he made indirect reference to defendant’s prior robbery conviction during cross-examination of a defense witness.
 

 Prior to trial, the court held a
 
 Sandoval
 
 hearing to determine whether defendant’s two previous convictions could be used by the People if defendant chose to take the stand
 
 (see, People v Sandoval,
 
 34 NY2d 371). It ruled that defendant could be cross-examined about a recent charge of criminal possession of a forged instrument but it precluded questioning about an armed robbery committed some 17 years earlier when defendant was a teenager.
 
 [2]
 

 Despite the
 
 Sandoval
 
 ruling, the prosecutor raised the subject of the robbery before the jury when a psychologist appearing on behalf of the defense testified that he would classify defendant as “a nonviolent type of individual, by and large, * * * throughout his life”. In cross-examining the psychologist, the prosecutor asked, over defense objections, “Did [defendant] indicate to you at some point that he committed a robbery?” The witness acknowledged that defendant had mentioned being arrested for robbery. The Judge subsequently instructed jurors that testimony about the robbery had no bearing on defendant’s guilt or innocence of the charges in the indictment on trial and was to be used only for evaluating the basis for the doctor’s opinion.
 

 Defendants who take the stand, like other witnesses, place their credibility in issue and thus may be cross-examined on
 
 *646
 
 past criminal or immoral acts relevant to credibility
 
 (People v Bennett,
 
 79 NY2d 464, 468;
 
 People v Sorge,
 
 301 NY 198, 200). A
 
 Sandoval
 
 hearing is designed to let the accused make an informed choice whether he should take the stand prior to testifying
 
 (People v Sandoval, supra,
 
 at 375;
 
 People v Powe,
 
 146 AD2d 718, 719,
 
 Iv denied
 
 73 NY2d 1020). We have stated that a
 
 Sandoval
 
 ruling, while directed at defining the permissible scope of cross-examination of the accused, can apply to cross-examination of defense witnesses as well
 
 (People v Williams,
 
 46 NY2d 799, 801 [prosecutor spontaneously introduced evidence of a past crime, contrary to the court’s
 
 Sandoval
 
 ruling, to test a fact witness’ general ability to recall events]). In the interest of plain fairness, a trial court’s authority to change its
 
 Sandoval
 
 ruling is limited once defendant has decided to testify in good-faith reliance on the court’s pretrial ruling
 
 (see, People v Powe, supra; see also, People v Oglesby,
 
 137 AD2d 840, 841-842,
 
 appeal dismissed
 
 72 NY2d 831).
 

 A different rationale applies, however, when the defendant or a witness for the defense testifies to facts that are in conflict with the precluded evidence. In such instances, the defense "opens the door” on the issue in question, and the witness is properly subject to impeachment by the prosecution’s use of the otherwise precluded evidence
 
 (People v Morgan,
 
 171 AD2d 698, 699,
 
 lv denied
 
 78 NY2d 971;
 
 see also, People v Garcia,
 
 169 AD2d 358, 363,
 
 lv denied
 
 79 NY2d 857;
 
 People v Beaumont,
 
 170 AD2d 513, 514,
 
 lv denied
 
 77 NY2d 958). Applying a similar rule to suppressed statements, the Supreme Court has said that the "shield provided by
 
 Miranda
 
 cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances”
 
 (Harris v New York,
 
 401 US 222, 226;
 
 see also, Oregon v Hass,
 
 420 US 714, 721-722). While the testimony here was not perjurious, the psychologist’s assertion that defendant had been nonviolent "throughout his life” was at odds with evidence that defendant had committed a robbery. Once the statement was made, the jury was entitled to know about evidence that could cast doubt on the psychologist’s conclusion.
 

 Of course, trial courts must exercise care to assure that the precluded evidence is not merely related to the testimony but in fact refutes the testimony given on direct
 
 (see, People v Garcia, supra).
 
 If the evidence is permitted, the court should issue limiting instructions, as the court did here when it told the jury that statements about the robbery were to be used in
 
 *647
 
 evaluating the basis for the psychologist’s opinion and not for determining guilt.
 

 IV.
 

 We have reviewed defendant’s other arguments and find them unpreserved.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 Order affirmed.
 

 [1]
 

 . "Such homicide is manslaughter in the first degree, when committed without a design to effect death * * *
 

 "2. In the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon”.
 

 [2]
 

 . The trial court was unable to determine whether the robbery charge was in fact adjudicated as a juvenile offense. For purposes of this appeal, we assume that the robbery led to a criminal conviction.