(May 11, 1995)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

ANTHONY DICKERSON, Appellant. [626 NYS2d 768] —Judgment, Supreme Court, Bronx County (Ira Globerman, J., at hearing; Harold Silverman, J., at trial and sentencing), rendered August 3, 1992, convicting defendant, following a jury trial, of manslaughter in the first degree and sentencing him, as a second felony offender, to a term of 12⅓ to 25 years, affirmed.

Defendant, having failed to raise before the trial court that the robing room conference was the equivalent of a *Sandoval* hearing, has failed to preserve any constitutional claims relating thereto *(People v Iannelli,* 69 NY2d 684, *cert denied* 482 US 914). In any event, the conference in the robing room did not constitute a *Sandoval* hearing. The trial court had already made its *Sandoval* ruling, and the meeting in the robing room was simply to discuss whether defendant's testimony had opened the door for further questioning. It is well established that defendant has no right to be present at such a conference, whether at the bench or in the robing room *(People v Velasco,* 77 NY2d 469, 472; *see, People v Jones,* 199 AD2d 6, *lv denied* 83 NY2d 806). Similarly, a defendant's physical presence is not required during legal arguments concerning a *Sandoval* determination to which he or she cannot possibly contribute *(People v Rivera,* 201 AD2d 377, *lv denied* 83 NY2d 875). There is, thus, no merit to the claim that defendant was deprived of his due process and statutory right to be present at all material stages of the proceeding against him when he was excluded from the robing room conference.

During his direct examination, defendant answered "Yes," when asked "and, by the way, were you ever convicted of the felony of robbery?" On cross-examination, when the prosecutor asked if defendant was actually guilty of that offense, he denied his guilt and insisted that he had pleaded guilty merely to avoid the possibility of a higher sentence. In asking this one question, the prosecutor violated neither the letter nor spirit of the court's *Sandoval* ruling. A defendant, as does any other witness, places his or her credibility in issue when he or she takes the stand and may be cross-examined as to past criminal or immoral acts that are relevant to credibility *(People v Fardan,* 82 NY2d 638, 645-646). "A *Sandoval* ruling does not allow a defendant to deceive the jury and be free from confrontation. A defendant who takes the stand is obliged to speak truthfully and accurately" *(People v Green,* 207 AD2d 318). By attempting to portray himself as an innocent man who had been wrongly convicted of robbery, defendant thereby opened the door to impeachment by other-

wise precluded inquiry *(People v Fardan, supra,* at 646), and it was not improper for the court to permit the prosecutor to question defendant as to the circumstances surrounding his arrest for the robbery.

Defendant also maintains he was deprived of his due process right to a fair trial when the People were permitted to use a statement that he had made before another Judge for impeachment purposes. However, defendant failed to object to the prosecutor's line of cross-examination on the ground being asserted now, and the claim presently advanced urges facts that are the opposite of what defendant's trial counsel maintained. Thus, although defendant now urges that the statement was made in the course of plea negotiations, it is clear from the record that defendant voluntarily blurted out a statement because he believed that it would be beneficial to him and that it was not made during plea negotiations. Concur—Sullivan, Ellerin, Williams and Mazzarelli, JJ.

Murphy, P. J., dissents in a memorandum as follows: When the People rested, there was a discussion with the court as to whether the defendant (because of his criminal record) would testify on his own behalf. After the prosecutor refused the court's suggestion to forego such questioning, the court, in a *Sandoval* ruling, stated that the People could inquire only as to whether the defendant had been convicted of robbery; the court specifically precluded inquiry upon whether the robbery had been "armed" or upon any of the other underlying circumstances. After consultation with his attorney and in view of the court's ruling, the defendant testified, acknowledging the robbery conviction on direct examination. On cross-examination the prosecutor asked the following question: "Q. By the way, you told the defense lawyer you were convicted of the felony of robbery. Were you guilty?" Over objection, the court allowed the question.

"A. I pleaded guilty.

"Q. Don't play games with us.

"MR. AUERBACH: Objection to the form.

"THE COURT: Disregard that remark.

"Q. Were you guilty? Did you do it?

"A. I was told in Westchester County in 1981 if I didn't accept three to six for a robbery, then I would get six to twelve. So I pleaded guilty in Westchester County.

"Q. Were you guilty in that robbery?

"A. No, I wasn't. I pleaded guilty to that robbery.

"Q. You were innocent of the robbery you pleaded to, and you got three to six years?

"A. Three to six years—an illegal sentence.

"Q. Excuse me—of what?

"A. Nothing."

At the next sidebar the prosecutor, claiming that the defendant had "opened the door", informed the court that he intended to go into the underlying facts of the robbery. A robing room conference followed from which the court excluded the defendant. While the court, after argument, stated that it was the prosecutor who "opened the door" and that the prosecutor could not "set the defendant up" with questions as to his guilt and "take advantage of [defendant's] answer", the court's amended *Sandoval* ruling nevertheless permitted the very inquiry for which the defendant had, to use the court's expression, been "set up". The court stated:

"If he is a predicate felon, you can ask, because he opened the door when he said that was an illegal sentence * * * You could ask him was he arrested right after the robbery, how long after the robbery was he arrested * * *

"You can ask him * * * is he familiar with this particular location, when he was arrested, under what circumstances he was arrested."

Defense counsel objected that this last ruling ranged well beyond the original *Sandoval* determination and that the prosecutor would now benefit by dint of having violated that determination, but the court held to its more recent ruling, observing that cross-examination on the circumstances of the arrest was relevant to the issue of credibility. Questioning resumed as to the prior conviction and the prosecutor elicited that the defendant had been arrested in Yonkers after a car chase through the Bronx.

The prosecutor then went into the facts of a prior plea negotiation had before a different Judge:

"Q. Isn't it a fact that you killed Alton Jarvis, then your gun jammed and you gave it to Reggie Green and told to him to get rid of the gun?

"A. No.

"Q. Do you know Reggie Green? * * *

"A. I know a couple of Greens * * *

"Q. Did you ever tell anybody that Reggie Green ended up with the murder weapon?

"A. I think I told the judge that and the District Attorney.

"MR. KAREN: I have no further questions.

"THE COURT: I am sorry, what was the answer?

"THE WITNESS: I think I told the judge and the District Attorney.

"THE COURT: When you say the judge, which judge were you referring to?

"THE WITNESS: The Judge before yourself.

"MR. KAREN: I have no further questions".

The foregoing was made a part of the prosecutor's summation:

"This man, Dickerson, tells us he doesn't know anything about the crime, and initially said he never saw a gun, doesn't know a Reggie Green. He tells some other Judge on this case Reggie Green ended up with the murder weapon.

"What stronger proof could you have than the defendant's word?"

A *Sandoval* hearing is a material stage of the trial which requires the presence of the defendant. As the Court of Appeals observed in *People v Dokes* (79 NY2d 656, 660), the presence of the defendant is essential since a *Sandoval* hearing involves "factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position." At the reopened *Sandoval* hearing the defendant, over objection, was denied this statutorily guaranteed due process right to meaningfully participate at the hearing in the robing room *(see, People v Gebrosky,* 80 NY2d 995). Defendant was excluded from a hearing the purpose of which was to decide whether the prosecutor could question him about the facts of his robbery conviction. As the resulting ruling was obviously unfavorable to defendant, harmless error review is not appropriate and the defendant is entitled to a new trial *(People v Favor,* 82 NY2d 254).

Further, the record is clear that the defendant testified with the understanding that the *Sandoval* ruling allowed but a single question as to whether or not he had been convicted of robbery. The purpose of the *Sandoval* ruling, of course, is to let the defendant make an informed decision as to whether he will testify in his own behalf *(see, e.g., People v Astacio,* 131 AD2d 684, 685). Plainly the purpose of the ruling in the present case was undone when the prosecutor with the court's acquiescence went beyond the limitation relied upon by the defendant when he took the witness stand. It was moreover not the defendant, but the prosecutor who "opened the door",

and the court's appropriate role at that juncture was not to open the door wider but to shut it in adherence to the ruling already made. Undoubtedly, the defendant's credibility was in issue and in that context particularly the court's error denied the defendant a fair trial.

Reversible error was also committed when the prosecutor was allowed to question the defendant on the substance of a plea negotiation before another Judge. Plea negotiations should be open and frank and unless there is an agreement with the prosecutor to allow the use of these discussions, such give and take before a Judge must remain out of a future trial. *(See, People v Spitaleri,* 9 NY2d 168.) The prosecutor's breach of this rule in this case where statements from plea negotiations were used in both cross-examination and summation was highly prejudicial.

I would reverse and remand for a new trial.