■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM GATEWOOD, Appellant. [660 NYS2d 122] —Judgment, Supreme Court, New York County (Paul Bookson, J.), rendered May 1, 1995, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 6½ to 13 years and a $2,000 fine, reversed, on the law, and the matter remanded for a new trial.

Defendant was denied a fair trial where the trial court erroneously modified its original ruling pursuant to *People v Sandoval* (34 NY2d 371), and then permitted the prosecution to violate the modified ruling (*see, People v Gomez*, 227 AD2d 210). The original ruling permitted counsel to elicit four misdemeanor convictions and one felony conviction from defendant should he testify, without going into the underlying facts or the nature of the charges. After defendant's direct testimony, the court modified its *Sandoval* ruling at the prosecution's request to permit counsel to go into the nature of defendant's prior convictions to the extent of inquiring as to the type of drugs involved in defendant's two prior drug sale convictions, since defendant had purportedly "opened the door" by conveying the impression that he was only a user of drugs, not a seller. However, in the course of defendant's cross-examination and in its summation, the prosecution delved extensively into the remainder of defendant's prior criminal history as well.

Once a *Sandoval* ruling has been made and the defendant has taken the stand, a trial court should only modify the ruling where defendant denies the existence of a prior conviction or gives misleading information concerning his or her background and prior conduct (*see, People v Fardan*, 82 NY2d 638, 646; *People v Astacio*, 131 AD2d 684; *People v Morgan*, 171 AD2d 698, *lv denied* 78 NY2d 971). Contrary to the People's contentions, neither of these circumstances occurred here. Defendant's direct testimony did no more than seek to explain why he was present at the time and place of the arrest and why he was in possession of the contraband found on his person, and neither he nor his counsel sought to imply that he had never sold drugs or did not have prior convictions for drug selling. "[D]efendant should not have been precluded from denying the very sale with which he was charged" (*People v Gomez, supra,* at 211). As a result of the erroneous modification of the ruling,

extremely prejudicial evidence regarding defendant's prior drug selling convictions was elicited from defendant on cross-examination and used on summation.

The prejudice to defendant was exacerbated by the court's permitting the prosecution to "open the door" and then step through it to exceed the bounds of the modified ruling and delve into the remainder of defendant's prior criminal history, including unrelated convictions over 30 years old. A defendant who testifies has the right "to expect that the court would not permit cross-examination to extend to matters apparently precluded by the [*Sandoval*] ruling" (*People v Aponte*, 168 AD2d 274, 275).

These errors cannot be considered harmless, given the circumstances that the case boiled down to the jury's comparison of defendant's credibility to that of the undercover officer and that there was significant physical evidence supporting defendant's contention that he was only using, not selling, drugs at the time of his arrest. We also find that these errors were duly preserved for review.

In light of the foregoing, we need not consider defendant's remaining contentions. Concur—Rosenberger, J. P., Rubin and Williams, JJ.

Nardelli, J., dissents in a memorandum as follows: I would affirm the conviction of defendant, finding that the modification of the *Sandoval* ruling by the court was proper under the circumstances. I disagree with the statement made by the majority that "[d]efendant's direct testimony did no more than seek to explain why he was present at the time and place of the arrest and why he was in possession of the contraband found on his person, and neither he nor his counsel sought to imply that he had never sold drugs or did not have prior convictions for drug selling." The Supreme Court, in modifying its *Sandoval* ruling found that the defense had opened the door by its opening statement and by its entire examination of defendant highlighting that he was *only* a user, even though he had prior convictions. Thus, in her opening statement, defense counsel stated that defendant was an addict who had *bought*, not sold, heroin on the day of his arrest. Throughout her remarks, she emphasized that defendant was an "addict" who needed heroin to function, that he used two packets of heroin "just to get himself functioning as a heroin addict." When defendant took the stand he continued to stress that he was only an addict and drug user. Rather than simply state that the first thing he did at the location was buy and use heroin, he spoke of his "drug dependency," noting "I'm dependent on her-

oin to get me started, to get me to feel better." In questioning defendant, counsel elicited that the police took him to the hospital after his arrest, "because * * * the two bags it wore off me and I was feeling sick," and later that defendant had skin ulcers which had been caused by injecting heroin. Defendant also testified that due to a 30-year addiction, he had poor circulation and had to snort heroin. Thus, defendant made addiction the focal point of the defense.

Pursuant to the court's *Sandoval* ruling, defendant admitted he had a felony and four misdemeanor convictions, but the underlying facts or the nature of the charges were *not* revealed to the jury. Accordingly, when the prosecutor asked for a modification of the *Sandoval* ruling, it was for the very real reason that the jury had been misled by defendant's testimony. As the court found, it was clear from defendant's testimony that he was conveying to the jury that he was *only* a user, and had, therefore, not sold drugs as charged. The questioning and testimony stressed defendant's addiction. In fact, the majority unwittingly shows the extent and effect of this questioning and testimony when it finds that there was "significant physical evidence supporting defendant's contention that he was only using, not selling, drugs at the time of his arrest." The *only* evidence referred to as "significant" before the jury supporting defendant's contention was defendant's extensive testimony about his life-long heroin dependency.

The majority also feels that the prosecutor's examination "exacerbated" the prejudice to the defendant by delving into defendant's prior criminal history, including unrelated convictions over 30 years old. However, the prosecutor did *not* begin his examination by asking the facts of defendant's prior convictions. He simply asked whether the defendant had pleaded guilty to selling drugs and whether he had, in fact, sold drugs. While defendant admitted pleading guilty, he *denied* ever selling drugs. Only *after* defendant had repudiated his prior guilty pleas did the prosecutor go more deeply into the underlying facts, having no other choice. In light of defendant's contention that he had only pleaded guilty in his two prior drug-sale convictions to get out of jail, the prosecutor was entitled to impeach his credibility by asking whether the defendant had lied to the court in prior plea proceedings. The *only* reason these questions were asked was the patently false and evasive answers given by defendant. The court ameliorated any prejudice to defendant when it emphasized in its charge that the prior convictions were admitted solely to assist the jury in considering *credibility* and that the jury should not consider them for any other purpose.

Finally, the evidence of defendant's guilt of selling drugs was proven by overwhelming evidence. Defendant, himself, does not challenge the sufficiency or the weight of the evidence. Defendant sold heroin to undercover Officer Torres at noon on a sunny day. Officer Torres noted she looked directly at defendant and gave the field team a detailed description of defendant and the clothing he was wearing. Her testimony was fully corroborated by Officer Cruz. He saw defendant and Torres in conversation and then saw the exchange. Officer Cruz stayed at the location and never lost sight of defendant up to his arrest.