■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD BROWN, Appellant. [675 NYS2d 186] —Carpinello, J. Appeal from a judgment of the County Court of Montgomery County (Sise, J.), rendered March 20, 1997, upon a verdict convicting defendant of the crimes of criminal sale of a con-

trolled substance in the third degree (four counts) and criminal possession of a controlled substance in the third degree (four counts).

Indicted on four counts each of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree as a result of allegations that he sold crack cocaine to an undercover police officer on four separate occasions in 1995, defendant was found guilty as charged after trial. The principal issue on appeal relates to the propriety of County Court's *Sandoval* (*see, People v Sandoval,* 34 NY2d 371) ruling, which permitted the People to use allegations of uncharged criminal conduct to impeach defendant's credibility on cross-examination.

Prior to the commencement of trial, defendant sought a ruling to determine the permissible scope of cross-examination in the event he elected to testify. At this time, the People indicated that there were no *Sandoval, Molineux* (*see, People v Molineux,* 168 NY 264) or *Ventimiglia* (*see, People v Ventimiglia,* 52 NY2d 350) issues. During jury selection, however, the People requested that the issue be revisited as they had apparently just received a February 1996 statement made by Ronnie Lapan implicating defendant in a number of drug sales. Defense counsel objected, noting that, in reliance on the prior *Sandoval* determination, he had advised the jurors that defendant would testify. County Court ruled that the People would be permitted to question defendant regarding Lapan's statement only in the event that defendant "opened the door" during his testimony.

After defendant took the stand and repeatedly denied having ever sold drugs—proffering himself as a "church goer" who had spent most of his life "preaching against drugs"—the People sought leave to cross-examine him with regard to Lapan's statement. In addition, and apparently for the first time, the People sought permission to question defendant regarding sales of crack cocaine to Kevin Lawless. As to Lawless, the People indicated that their good-faith basis for such questioning consisted of oral statements made to an Assistant District Attorney by Lawless earlier that day. Finding defendant's testimony to have opened the door, County Court permitted the People to question defendant concerning the allegations made by Lapan and Lawless. At the time of questioning and again during its final instructions, County Court instructed the jury that such questioning could only be considered in determining defendant's credibility and could not be used as evidence of guilt.

Contrary to defendant's contentions, County Court did not abuse its discretion in modifying its *Sandoval* ruling based upon the People's representation that they had just received Lapan's statement notwithstanding the fact that it had apparently been given one year earlier. While CPL 240.43 requires disclosure of material "of which the prosecutor has knowledge", it does not preclude consideration of after-acquired material (*see, People v Brown*, 202 AD2d 266, 267, *lv denied* 83 NY2d 964). While a defendant's good-faith reliance on a prior *Sandoval* ruling limits the trial court's authority to change the ruling, "[a] different rationale applies * * * when the defendant * * * testifies to facts that are in conflict with the precluded evidence", in which case such testimony opens the door for impeachment with the otherwise precluded evidence (*People v Fardan*, 82 NY2d 638, 646). Nor do we find error in the court's determination that defendant opened the door to this otherwise precluded evidence.

With respect to the cross-examination of defendant on the basis of the statements of Lapan and Lawless, defendant alleges that County Court abused its discretion by allowing the People to impeach him with allegedly "highly inflammatory" allegations of uncharged prior drug sales without weighing the relevant *Sandoval* factors. In our view, even assuming that defendant is correct in maintaining that the probative value of the impeachment testimony was outweighed by its prejudicial impact (*see, e.g., People v Williams*, 56 NY2d 236, 238-239), the error was harmless in view of the overwhelming evidence of defendant's guilt and the ameliorative instructions given to the jury (*see, People v La Mountain*, 249 AD2d 584, 586). In addition to the testimony of the undercover police officer to whom defendant sold the drugs, the People presented the testimony of the individual who introduced the police officer to defendant and who was in fact present for two of the transactions.

Defendant's remaining contention, that rebuttal evidence concerning the presence of a propane torch in his home was improperly admitted, is without merit. Although illegally seized, the evidence was admitted for the limited purpose of impeaching the credibility of defendant's testimony during which he explicitly denied ownership or possession of a propane torch (*see, People v Mullins*, 179 AD2d 48, 51, *lv denied* 80 NY2d 835), and County Court so advised the jury in a limiting instruction.

Crew III, Yesawich Jr. and Peters, JJ., concur.

Mikoll, J. P. (concurring). Although harmless in this instance, I am of the view that the cross-examination of defendant on

the basis of the statements of Ronnie Lapan and Kevin Lawless was improper and consider the issue worthy of discussion and comment.

As a general proposition, of course, a defendant who testifies places himself in the same position as any other witness, including exposure to cross-examination on matters affecting his credibility (*see, e.g., People v Betts*, 70 NY2d 289). It is likewise true that for impeachment purposes, evidence which would otherwise be inadmissible may be utilized in cross-examination upon a finding that defendant, through his testimony, "opened the door" to its use. The rationale for this rule is the principle that the shield protecting a defendant from use of the material in the first instance " 'cannot be perverted into a license to use perjury by way of a defense' " (*People v Fardan*, 82 NY2d 638, 646, quoting *Harris v New York*, 401 US 222, 226).

These principles are not without limitations, however fundamental they may be. First and foremost, the impeachment evidence must have probative value. Thus, in *People v Fardan* (*supra*) the Court of Appeals cautioned that "trial courts must exercise care to assure that the precluded evidence is not merely related to the testimony *but in fact refutes the testimony given on direct*" (*id.*, at 646 [emphasis supplied]). Most commonly, this evidence will take the form of prior convictions whose nature is relevant to credibility or which refute a defendant's denial (*see, e.g., People v Rodriguez*, 85 NY2d 586, 591-592; *People v Fardan, supra*, at 645-646). Moreover, even where such evidence has probative value, it should not be admitted unless its probative value sufficiently outweighs its prejudicial impact (*see, People v Dokes*, 79 NY2d 656, 661).

The material at issue here is questionable under both criteria. Initially, its probative value is marginal. Just as a witness may not be impeached on the basis of an arrest or accusation of prior criminal conduct because it has no probative value (*see*, Prince, Richardson on Evidence § 6-409, at 397 [Farrell 11th ed]; *see also, People v Grant*, 234 AD2d 475, 476; *People v Colas*, 206 AD2d 183, 186-187, *lv denied* 85 NY2d 907; *People v Gottlieb*, 130 AD2d 202, 207, *mod* 132 AD2d 498), neither should unsubstantiated, hearsay accusations be invested with evidentiary significance. Testimony which arguably "opens the door" for impeachment does so only for evidence that truly refutes it (*see, People v Garcia*, 169 AD2d 358, 363, *lv denied* 79 NY2d 857; *People v Steele*, 168 AD2d 937, 938, *lv denied* 77 NY2d 967). Furthermore, while a defendant may be cross-examined about immoral, criminal or vicious acts even though

such acts did not result in convictions, it is elementary that such questions must be asked in good faith and with a reasonable basis *in fact* (*see,* Prince, Richardson on Evidence § 6-406, at 389 [Farrell 11th ed]; *see also, People v Duffy,* 36 NY2d 258, 262, *mod* 36 NY2d 857, *cert denied* 423 US 861; *People v Steele, supra,* at 938; *People v Booker,* 134 AD2d 949, 949-950, *lv denied* 70 NY2d 953; *People v Delacruz,* 127 AD2d 887, 888-889; *People v Simpson,* 109 AD2d 461, 464, *appeal dismissed* 67 NY2d 1026).* Thus, measuring its slight probative worth against the potential for undue prejudice, particularly in view of its similarity to the crimes with which defendant was charged and the excessive number of incidents to which it referred (*see, People v Turner,* 247 AD2d 821; *People v Santiago,* 47 AD2d 476, 478-480), the evidence should not have been used.

Ordered that the judgment is affirmed.

---

* The question of what constitutes such good faith or "reasonable basis in fact" divided the Court of Appeals in *People v Alamo* (23 NY2d 630, *cert denied* 396 US 879) and has received scant judicial attention since (*see, People v Simpson,* 109 AD2d 461, 471, *appeal dismissed* 67 NY2d 1026). While the dissent in *People v Alamo* argued for a standard requiring that the factual truth of the matter be established, the majority held that the cross-examiner must possess "some reasonable basis for believing the truth" of the matter upon which the witness is questioned (*id.,* at 633).