■ The People of the State of New York, Respondent, v Dean Wright, Appellant. [690 NYS2d 286] —Mercure, J. Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered January 29, 1998, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the third degree and promoting prison contraband in the first degree.

Defendant, then an inmate at Sullivan Correctional Facility in Sullivan County, was indicted for criminal possession of a weapon in the third degree and promoting prison contraband in the first degree as the result of a June 2, 1997 incident in which he allegedly caused a metal detector to sound and a subsequent strip search revealed a razor blade wrapped in electrical tape secreted between his buttocks. Convicted after trial of both counts, defendant now appeals.

We are persuaded that the People's violation of County Court's *Sandoval* ruling and County Court's subsequent erroneous modification of that ruling deprived defendant of a fair trial, requiring reversal of the judgment of conviction and remittal for a new trial. At the *Sandoval* hearing, the People sought leave to impeach defendant with evidence of prior convictions of burglary in the first degree and felony murder, both arising out of an incident in which defendant entered a dwelling armed with a deadly weapon and a nonparticipant in the crime was killed during the incident. County Court ruled that, in the event that defendant took the stand, the People could use the burglary conviction for impeachment purposes. With respect to the felony murder conviction, however, County Court determined that "since that arose from the burglary and was part and parcel and is a result of him being convicted for the burglary, at this time [it would] not allow specific mention of the Felony Murder".

At trial, defendant testified on his own behalf. Contradicting the testimony of the People's witness, he claimed that upon leaving the prison exercise yard he was required to pass through a metal detector twice, but never caused the alarm to sound. He also stated that the ensuing strip search was conducted with five correction officers present, instead of the requisite two, and that he had no razor blade or other weapon on his person at the time. The entire cross-examination of defendant, conducted by Assistant District Attorney K.C. Garn, and related colloquy of County Court and defense counsel Tim Havas follows:

"Q: Mr. Wright, are you telling the jury that [you didn't] try to push that razor blade further up your anal cavity?

"A: Yes, I'm telling the jury that.

"Q: And you're telling the jury that it didn't fall out of your anus and fall onto the floor in front of the officer?

"A: Yes, sir.

"Q: And to be incarcerated in Sullivan Correctional Facility you were convicted of the crime of murder, isn't that right?

"MR. HAVAS: Objection.

"THE COURT: Basis for that, Mr. Havas?

"MR. HAVAS: Beyond the scope of the Sandoval ruling and motion for mistrial.

"THE COURT: Overruled. You may continue.

"Q: You're convicted of murder, Mr. Wright?

"A: Yes, sir.

"Q: Do you remember who it was you murdered?

"A: Yes. Trevor Davis.

"MR. GARN: I have no further questions, Judge".

Defense counsel immediately sought to make an application outside the presence of the jury and, after defendant completed his case with brief testimony from the final defense witness and the jury was excused for a break, the following colloquy took place:

"THE COURT: All right. I don't want to be an Indian giver. I think we should sum up before lunch, charge after lunch and I think—

"MR. HAVAS: I can't possibly do it right now to be honest with you.

"THE COURT: To be honest with you, Mr. Havas, there is no legal, no professional, no ethical, no moral, no reason that I can even come up with as to why you wouldn't be prepared to sum up in ten seconds, but I'll give you more than ten seconds, so I'll deal with that later on, but let me hear the applications you have to make and then we'll talk scheduling.

"MR. HAVAS: The application is for a mistrial, Your Honor.

"THE COURT: Why is that?

"MR. HAVAS: Because the Court did not authorize the People to question with respect to a murder conviction as part of the Sandoval.

"THE COURT: Mr. Garn.

"MR. GARN: Judge, at the Sandoval hearing Your Honor made a ruling that one of the convictions I could use and one I could not. I believe Mr. Havas may be correct that I was not to use

the murder conviction, but I was to use the burglary in the first degree charge. In that case, then I have made a mistake and I will accept whatever punishment Your Honor metes out. All I can say is my recollection is I could ask him about the murder but not the burglary. If my recollection is wrong, so be it".

County Court then excused the jury for the day, recessed for lunch and adjourned the matter for further legal argument later that afternoon. At that time, defense counsel argued in favor of the motion for a mistrial, contending, first, that he would not have called defendant as a witness if he had known defendant would be questioned concerning the murder and, second, that by asking defendant if he had been convicted of murder, as opposed to felony murder, the People actually mischaracterized his criminal conviction. Despite the absence of any contrary argument by the People, County Court denied defendant's application for a mistrial, concluding that the People's questioning was permissible because the original *Sandoval* ruling had not actually limited them from inquiring concerning "the facts and circumstances of the murder". The following day, just prior to the parties' summations, County Court gave the jury a short preliminary charge, which made no reference to the People's impermissible inquiry or the fact that defendant never had been convicted of "murder", but merely indicated that the jury was not to consider the fact that defendant had previously been convicted of a crime as proof that he committed any of the present crimes and could consider defendant's previous conviction only for the purpose of assisting it in making an evaluation of his credibility.

In our view, County Court's error was highly prejudicial. As conceded by the People, both at trial and now in this Court, the pretrial *Sandoval* ruling clearly prohibited the People from questioning defendant concerning his conviction for felony murder. The Assistant District Attorney's mere inquiry concerning a prior "murder" conviction may not have required reversal had the error been promptly and appropriately dealt with (*compare, People v Martin*, 172 AD2d 268, 270), but County Court's denial of defendant's objection (*see, People v Ashwal*, 39 NY2d 105, 111) and after-the-fact rationalization for its erroneous ruling precluded any realistic opportunity for effective curative action (*compare, People v Davis*, 208 AD2d 1062, 1063, *lv denied* 84 NY2d 1010). Notably, once a defendant has testified, a *Sandoval* ruling may be modified only if the defendant denies the existence of a prior conviction or gives misleading testimony concerning his or her prior background or conduct

(*see, People v Fardan*, 82 NY2d 638, 646; *People v Gatewood*, 241 AD2d 372, *appeal dismissed* 91 NY2d 947), neither of which happened here. Further, County Court's preliminary charge came far too late and said much too little, failing even to acknowledge that an error had been committed (*see, People v Martin, supra*, at 270).

We are unpersuaded by the People's contention that, because of the overwhelming evidence of defendant's guilt, the error was harmless. In our view, the direct conflict between the testimony presented by the People's witness, a correction officer and that presented by defendant and his corroborating witness created a sharp credibility issue for resolution by the jury. Further, the surveillance camera videotape produced by the People during trial did little to resolve that issue. Notably, in our viewing of the tape, we could see no object falling from between defendant's buttocks or legs and, at the point where the object is purported to have fallen, additional correction officers are seen to enter the room, one positioning himself in such a way as to completely block the camera's view of the scene. Under all the circumstances previously set forth, and considering the nature of the crimes alleged in the indictment and the fact that the jurors were given the false impression that defendant had been found guilty of intentional murder, the likelihood of prejudice was manifest (*see, People v Gatewood, supra; People v Martin, supra; People v Butchino*, 141 AD2d 986).

Because the matter is to be remitted for a new trial, we need not consider defendant's contentions concerning the People's late production of the videotape.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Sullivan County for a new trial.