■ The People of the State of New York, Respondent, v Lance T. Pitts, Appellant. [734 NYS2d 738] —Peters, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered October 6, 1999, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree.

Upon this appeal, defendant challenges County Court's denial of his suppression motion as well as its determination permitting the People to inquire about his youthful offender

adjudications. Reviewing the circumstances surrounding defendant's custodial statements, we do not find, as urged by defendant, that they were obtained in violation of his right to counsel.

At the *Huntley* hearing, the parties stipulated to the circumstances preceding the custodial disclosures. On May 6, 1998, two undercover State Troopers allegedly purchased a quantity of drugs from defendant in the City of Troy, Rensselaer County. Shortly thereafter, Troy Police Officer Richard Schoonmaker stopped and arrested defendant for not having a light or bell on his bicycle; he was also charged with criminal possession of a controlled substance in the third degree for allegedly possessing a quantity of crack cocaine. The next morning, he was arraigned in Troy City Court and assigned counsel. At a conference on June 3, 1998, it was agreed that this case would be returned to City Court and that defendant would participate in the drug court program. On June 12, 1998, defendant pleaded guilty to misdemeanor drug possession and was released on his own recognizance to the Rensselaer County Probation Department and to the Treatment Alternatives to Street Crimes (hereinafter TASC), with the matter adjourned for an appearance on July 7, 1998. On July 7, 1998 the matter was adjourned to August 14, 1998.

Meanwhile, in mid-July 1998, the allegations concerning the undercover buy on May 6, 1998 were presented to a grand jury. A sealed indictment was handed up and County Court issued a warrant on that indictment. As scheduled, defendant appeared at Troy City Court on August 14, 1998, but left prior to his case being called; a bench warrant was issued and the warrant was entered on the Department of Criminal Justice Services computer on August 17, 1998. On September 2, 1998, a warrant concerning another crime was issued in New York City.

On November 30, 1998 at 7:00 P.M., Milton Thompson was shot and killed in Troy. The police became aware that a person with the street name "P" and another with the street name "Hammer" were either witnesses to or involved in the shooting. The next morning, Schoonmaker apprehended defendant and took him into custody based upon the outstanding warrants. Schoonmaker knew defendant used the street name "P." After receiving his *Miranda* warnings and waiving his right to counsel, defendant signed a written inculpatory statement and made oral admissions concerning the crime.

Testimonial evidence from police authorities revealed that while they were aware that counsel had represented defendant

on the bicycle violation and drug possession charges, they were unaware that such attorney was still representing him when they arrested him on the warrants. Notably, defendant had pleaded guilty to that crime and, therefore, pursuant to CPL 1.20 (13), a "conviction" had been rendered;[1] the criminal action, however, had not been concluded since defendant had not yet been sentenced.[2]

As the Court of Appeals has guided, "[w]hen the prior charge has been disposed of by dismissal or conviction, the indelible right to counsel disappears and * * * defendant is capable of waiving counsel on the new charge" (*People v Bing*, 76 NY2d 331, 344, citing *People v Robles*, 72 NY2d 689, 698). Following this precept and mindful of the fact that defendant had further attenuated the attorney-client relationship by failing to appear in court on that matter, we agree with County Court that defendant made a knowing, intelligent and voluntary waiver of his right to counsel (*see, People v Lovell*, 267 AD2d 476, *lv denied* 95 NY2d 799; *People v Napier*, 261 AD2d 347, *lv denied* 94 NY2d 865; *People v Acosta*, 259 AD2d 422, *lv denied* 93 NY2d 1001; *People v Windbush*, 202 AD2d 527, *lv denied* 83 NY2d 878).

Nor do we discern error in County Court's decision to permit inquiry concerning defendant's youthful criminal conduct. After a *Sandoval/Ventimiglia* hearing, County Court prohibited cross-examination concerning defendant's youthful offender and juvenile delinquent adjudications should he choose to testify. However, once defendant made numerous gratuitous references in his trial testimony to "run-ins" with police during his youth, County Court properly permitted such inquiry by finding that defendant "opened the door" to such inquiry by the nature of his testimony (*see, People v Fardan*, 82 NY2d 638).

Cardona, P.J., Mercure, Crew III and Spain, JJ., concur. Ordered that the judgment is affirmed.

---

**1.** CPL 1.20 (13) defines "conviction" as "the entry of a plea of guilty to, or a verdict upon, an accusatory instrument other than a felony complaint, or to one or more counts of such instrument."

**2.** CPL 1.20 (16) (c) provides that a "criminal action * * * terminates with the imposition of sentence or some other final disposition in a criminal court of the last accusatory instrument filed in the case."