**Daryl GRAHAM, Petitioner,**

v.

**Leonard PORTUONDO, Respondent.**

**No. 01–CV–6911.**

United States District Court,
E.D. New York.

Aug. 12, 2010.

Alan M. Nelson, Alan Nelson Esq., Lake Success, NY, Andrea G. Hirsch, Andrea G. Hirsch, Esq., New York, NY, for Petitioner.

Karol Baird Mangum, Kings County District Attorneys Office, Amy Merrill Appelbaum, Office of the D.A., Kings County, Mark Hale, Brooklyn, NY, for Respondent.

## MEMORANDUM, ORDER AND JUDGMENT GRANTING PETITION

JACK B. WEINSTEIN, District Judge:

## Table of Contents

I. Facts and Procedural History .............................................. 102
 A. State Proceedings ................................................... 102
 B. Federal Habeas Proceedings ......................................... 103

II. Law ..................................................................... 104
 A. Antiterrorism and Effective Death Penalty Act ...................... 104
 B. Exhaustion ......................................................... 105
 C. Second Petition .................................................... 105
 D. Ineffective Assistance of Counsel .................................. 105

III. Analysis of Claims ...................................................... 107
 A. Denial of Effective Assistance of Counsel .......................... 107
 1. Deficient Performance ......................................... 107
 2. Prejudice ..................................................... 109
 3. Presentation of Claim ......................................... 110
 4. Exhaustion and Second Petition—A Procedural Conundrum ......... 110
 B. Other Claims ....................................................... 111

IV. Conclusion .............................................................. 111

Daryl Graham ("petitioner") was convicted in the Supreme Court for Kings County of second-degree murder for killing his former girlfriend. A sentence of twenty-five years to life is being served. Contending that his federal constitutional rights were violated, he sought federal habeas corpus relief.

A hearing was provided in the district court on October 29, 2003. Petitioner, proceeding *pro se,* did not establish that he was entitled to relief. His petition was denied. *Graham v. Portuondo (Graham I),* No., 01–CV–6911, 2003 WL 23185715 (E.D.N.Y. Oct. 30, 2003).

The Court of Appeals for the Second Circuit granted a certificate of appealability, vacated the judgment, and remanded for an evidentiary hearing at which petitioner would be represented by counsel. *Graham v. Portuondo (Graham II),* 506 F.3d 105 (2d Cir.2007). That hearing was afforded on March 5 and 17, 2010. Petitioner was present and represented by

counsel. Extensive briefing has been submitted by counsel.

For the reasons stated orally at the March 5 and March 17, 2010 hearing and discussed below, after considering extensive argument and evidence presented following remand, petitioner's application for a writ of habeas corpus is granted on the ground of ineffective assistance of counsel.

This memorandum relies on petitioner's present claims. The statements and findings made at the March 5 and 17, 2010 hearing are deemed part of this memorandum, as are those in *Graham I*, 2003 WL 23185715.

## I. Facts and Procedural History

The following facts, based upon the state court record and submissions and evidence presented to this court before and after remand are established by clear and convincing evidence. *See, e.g.*, Affidavit of Karol Magnum, Esq. in Opposition to Petition for Writ of Habeas Corpus, dated Nov. 28, 2001, Docket Entry (D.E.) No. 28–3; Declaration of Andrea Hirsch, Esq. in Support of Petition for Writ of Habeas Corpus, dated Dec. 6, 2007, D.E. No. 26; Petitioner's Response to Court's Queries, dated Jan. 22, 2008, D.E. No. 39; Respondent's Supplemental Affidavit and Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, dated Feb. 25, 2008, D.E. No. 45; Declaration of Andrea Hirsch, Esq. in Response to Court's Queries, dated Mar. 31, 2008, D.E. No. 54–1; Petitioner's Post–Hearing Papers, dated May 28, 2010, D.E. No. 126; Respondent's Post–Hearing Memorandum in Opposition to Petition for Writ of Habeas Corpus, dated July 30, 2010, D.E. No. 131; *see also Graham I*, 2003 WL 23185715; *Graham II*, 506 F.3d at 105–08.

### A. State Proceedings

Petitioner was tried in the Supreme Court for Kings County in 1996 for killing his former girlfriend, Roxanne Thomas. On a July afternoon in 1995, he entered Ms. Thomas's automobile to discuss the return of his personal belongings. Several months earlier, Ms. Thomas had asked Graham to leave the house in which the two cohabitated.

Graham testified on his own behalf at trial. He said that while in her car he became enraged because a license and other personal belongings would not be returned by Ms. Thomas. He killed her by stabbing her nineteen times. No other witnesses testified for the defense.

Nadine Ennis testified that from the backseat of the automobile, she observed Graham in the front stabbing Ms. Thomas, who was driving the car. The car hit a parked vehicle and stopped. Ennis ran to get help. Andre Watson testified that he also saw Graham stab Ms. Thomas. He held Graham until the police arrived a few minutes later. Another passerby, Edwin Lopez, secured the knife. Graham did not struggle. He said that he wanted to get his bag and go home. He was arrested at the scene and charged with second-degree intentional murder, *see* N.Y. Penal Law § 125.25(1), and second-degree depraved indifference murder, *see* N.Y. Penal Law § 125.25(2).

Although the New York Court of Appeals recently has held that death resulting from the type of one-on-one altercation involved in the instant case must now be treated as an intentional murder, *see People v. Feingold*, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (2006), at the time of Graham's trial it was not erroneous to charge both intentional and depraved-indifference murder for such a killing. *See Policano v. Herbert*, 7 N.Y.3d 588, 601–3, 825 N.Y.S.2d 678, 859 N.E.2d 484 (2006); *Charriez v. Greiner*, 265 F.R.D. 70 (E.D.N.Y.2010). Graham was convicted of depraved indifference murder and sen-

tenced to the maximum of twenty-five years to life.

The Appellate Division affirmed the conviction and sentence. It held that the trial court did not abuse its discretion in finding petitioner fit to stand trial based on his demeanor on the stand and the independent determination of two psychiatrists. *People v. Graham,* 272 A.D.2d 479, 708 N.Y.S.2d 336 (App.Div.2000). Petitioner's remaining contentions, including those involving ineffective assistance of counsel, were held to be without merit. An application for leave to appeal to the New York State Court of Appeals was denied. *People v. Graham,* 95 N.Y.2d 865, 715 N.Y.S.2d 220, 738 N.E.2d 368 (N.Y.2000).

### B. Federal Habeas Proceedings

In a *pro se* habeas petition, filed in 2001, petitioner claimed that (1) he was denied the effective assistance of trial counsel, both in preparing a defense of extreme emotional disturbance and in petitioning for a second competency hearing at trial; (2) the trial court abused its discretion by failing to hold a competency hearing; and (3) the competency inquiry was inadequate and inconclusive. Attached to the petition were: (1) a competency report prepared pursuant to N.Y. C.P.L. § 730 ("730 Report"); (2) a pre-sentence psychoanalytic evaluation prepared pursuant to N.Y. C.P.L. § 390.30(2) ("390 Report"); and (3) a summary of medical records from Riker's Island penitentiary. Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated Aug. 27, 2001.

At an evidentiary hearing in the district court, state trial defense counsel testified extensively about the full factual research on defendant's psychic background that he did in preparation for trial. Petitioner, proceeding without representation, examined, without impeaching, his former attorney's credibility. *See* 10/2003 Hr'g Tr.,

D.E. 7; *Graham II,* 506 F.3d at 106. The 730 and 390 reports were introduced. No psychiatric records or other reports were provided.

The district court rejected petitioner's claim that trial counsel was ineffective in failing to explore his psychiatric history in preparation of a psychiatric defense. Also denied were his ineffective assistance and due process claims related to his competency to stand trial. *Graham I,* 2003 WL 23185715, at *5–8.

Petitioner, represented by counsel, appealed. The Court of Appeals for the Second Circuit granted a certificate of appealability, reversed the order denying petitioner's application, and remanded for assignment of counsel and a second evidentiary hearing. *Graham II,* 506 F.3d at 108.

Petitioner's appellate habeas counsel and a co-counsel were appointed by the district court to represent petitioner. Counsel filed a supplemental brief in support of petitioner's original petition for a writ of habeas corpus. Supplemental Papers in Support of *Pro Se* Petition Brought Under 28 U.S.C. § 2254, dated Dec. 7, 2007 ("Pet. Supp. Br. dated 12/07/07"), D.E. No. 22. In it, counsel reasserted contentions made in petitioner's *pro se* application that 1) trial counsel was ineffective; 2) that the competency examination was inadequate; and 3) that the trial court should have ordered a second competency examination. *Id.* at 2–4, 9–13. A claim of ineffectiveness of appellate counsel was abandoned.

In addition, counsel argued that state trial counsel was ineffective because he failed adequately to explore and pursue a psychiatric defense. *See id.* The supplemental papers specifically challenged the failure to obtain petitioner's available psychiatric records, to press a defense of extreme emotional disturbance, or to obtain

an extreme-emotional-disturbance charge. *Id.* at 2, 9–12. Challenged in addition were state trial counsel's alleged deficiencies in dealing with the state's evidence, the defense's summation, and at sentencing. *E.g., id.* at 10–14.

Pursuant to the Court of Appeal's mandate in *Graham II,* 506 F.3d at 105, a second evidentiary hearing was held by the district court on March 5 and 17, 2010. *See generally* 3/5/10 Hr'g Tr., D.E. No., 126–1; 3/17/10 Hr'g Tr., D.E. No. 126–2. Petitioner was present and represented by counsel. State trial defense counsel was recalled. He was examined and cross-examined by experienced counsel about the steps he took to investigate defendant's psychiatric history in advance of trial and to prepare his defense. *See* 3/17/10 Hr'g. Tr., at 165–212.

From information listed in the state 730 report, records of petitioner's psychiatric history had been obtained by habeas counsel. They were admitted by consent. *See* 3/5/10 Hr'g Tr. at 12–16. Included were 1975 records from Massachusetts Mental Health Center (MMHC); from Peter Bent Brigham Hospital dated 1975; from Maimonides Hospital dated 1991 and 1993; from Independence Support Center ("ISC") dated 1995; and from the Mental Observation Unit at Riker's Island penitentiary dated 1995–1996. *See* Exhs. C, M–G Pet. Supp. Br. dated 12/07/07 (psychiatric records).

Forensic psychiatrist Dr. Eric Goldsmith, petitioner's expert, testified that petitioner's prior medical records would have been critical in determining whether he had a viable psychiatric defense. *See* 3/5/10 Hr'g Tr. at 13–14. He opined that petitioner is and was schizophrenic and that he was suffering from a psychotic breakdown at the time of the killing. According to Dr. Goldsmith, there was a reasonable explanation for Graham's loss of self-control and rage: in his deluded and psychotic state, petitioner believed that Ms. Thomas was withholding his respiratory therapist license, which he needed to work. *Id.* at 78–82. There was no such license.

The state's expert, forensic psychiatrist, Dr. Alexander Bardey, agreed that it was important to review petitioner's history to determine his mental state at the time of the killing. 3/17/10 Hr'g Tr. at 43–44; 96–99. He disagreed with Dr. Goldsmith's conclusion that petitioner was schizophrenic or suffering from any mental defect or emotional disturbance when he killed Ms. Thomas. *Id.* at 49–60. He attributed petitioner's symptoms and history of psychiatric treatment to alcoholism and did not consider the absence of a respiratory therapist license Graham believed he had earned to be relevant. *See id.*

## II. Law

### A. Antiterrorism and Effective Death Penalty Act

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Determination of factual issues made by the state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement [was] . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement required the petitioner to have presented to the state court "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

■ Although, pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing both exhausted and unexhausted claims-so-called "mixed petitions," *see* 28 U.S.C. § 2254(b)(2), there is no provision in AEDPA for district courts to *grant* such petitions. Petitions may not be *granted* if they contain any unexhausted claim, unless the unexhausted claim is otherwise exempted from the exhaustion requirement of AEDPA. *See, e.g., McKeehan v. Zon,* No. 05–CV–0454, 2006 WL 232552, *2 (W.D.N.Y. Jan. 27, 2006) ("The Court cannot grant a mixed petition. . . ."); *Peterson v. State of New York,* No. 00–CV–4777, 2005 WL 1278516, *1 (S.D.N.Y. May 26, 2005) ("A district court may not grant a habeas petition when the petition contains unexhausted claims, unless the unexhausted claims are subject to the exceptions to the exhaustion requirement."); *see also, e.g., Snyder v. Ortiz,* 288 Fed.Appx. 505, 509 (10th Cir.2008) (rejecting district court's "hybrid approach" of dismissing a petition's unexhausted claims while reaching merits of exhausted claims).

## C. Second Petition

If a petition is brought on a "claim . . . that was not presented in a prior application . . . [it must be] dismissed," unless the Court of Appeals Authorizes it. 28 U.S.C. § 2244(b)(2). This means that, in the context of the present proceeding, if a new contention is introduced in this long-pending petition, amendment of the petition to assert a new claim cannot be permitted under Rule 15 of the Rules of Civil Procedure. Such an amendment would contravene Congressional AEDPA policy in favor of finality of determination under 28 U.S.C. § 2244. The district court would have to dismiss the new claim or transfer it to the Court of Appeals so petitioner could seek permission for the district court to entertain it.

Nor can the finality policy under 28 U.S.C. § 2244 be avoided by going back to the state court, should exhaustion be required, and then bringing a new petition in the district court, after exhaustion, without appellate permission.

■ If, however, the new assertion, fairly construed, is essentially part of the same claim as that brought in the pending petition it is properly before the district court and needs no application to the Court of Appeals before it can be adjudicated.

## D. Ineffective Assistance of Counsel

■ The Sixth Amendment requires that criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to the *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained:

In giving meaning to the requirement ... we must take its purpose—to ensure a fair trial—as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ In order to prevail on an ineffective assistance claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Ineffective assistance of counsel may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

■■ In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reached the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, *even if the errors of counsel cannot be shown by a preponderance* of the evidence to have determined the outcome." *Henry v. Poole,* 409

F.3d 48, 64 (2d Cir.2005) (original emphasis; quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052); *see also Rosario v. Ercole,* 601 F.3d 118, 122–28 (2d Cir.2010).

■ Strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052; *see also Eze v. Senkowski,* 321 F.3d 110, 136 (2d Cir.2003). Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. The duty to investigate does not require counsel to conduct a searching investigation into every defense, *see id.* at 699, 104 S.Ct. 2052, or "to scour the globe on the off-chance that something will turn up." *Rompilla v. Beard,* 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). "Reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Id.*; *United States v. Caracappa,* 614 F.3d 30, 47 (2d Cir.2010) (*quoting United States v. Eppolito,* 436 F.Supp.2d 532, 562 (E.D.N.Y.2006)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see also Bierenbaum v. Graham,* 607 F.3d 36, 50–51 (2d Cir. 2010).

■ Each separate factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir. 1991) (dismissing petition as unexhausted

where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (internal quotation marks omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Vasquez v. Hillery,* 474 U.S. 254, 260, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *Caballero v. Keane,* 42 F.3d 738, 741 (2d Cir.1994); *accord Jones v. Keane,* 329 F.3d 290, 294–95 (2d Cir.2003) ("[T]he claim presented to the state court, in other words, must be the 'substantial equivalent' of the claim raised in the federal habeas petition.") (citations omitted).

### III. Analysis of Claims

#### A. Denial of Effective Assistance of Counsel

Petitioner now claims his trial counsel was ineffective on a number of grounds, most importantly for his failure to investigate his past history of mental illness. As the district court recognized in considering petitioner's initial *pro se* petition, *see Graham I,* 2003 WL 23185715, at *5, examination of this history was crucial since the defense intended to seek a charge of extreme emotional disturbance. The only evidence offered at trial in support of this requested charge, which the trial court refused, was the testimony of petitioner.

Three issues are presented: 1) did the state defense counsel meet minimum standards for representation; 2) had counsel met minimum standards of representation by obtaining available records of petitioner's substantial psychiatric history and presenting those records, would it be likely that the jury's decision to convict petition-

er of depraved indifference murder would have been different or that his sentence would not have been as harsh; and 3) was the present claim of ineffectiveness based on a psychiatric defense or on reasons for compassion in sentencing substantially equivalent to the claim in the original petition—essentially based on competency to stand trial—to be considered by the district court after remand, or is it in effect a second claim requiring either application to the Court of Appeals for the Second Circuit before it can be heard, or dismissal by the district court for failure to exhaust.

#### 1. Deficient Performance

██ As to the first issue, the answer is clear. State defense trial counsel did not meet minimum standards required by the Sixth Amendment. In considering this issue after the initial hearing, in which petitioner was unrepresented, the district court was convinced of trial counsel's thorough investigation. It stated:

> Trial counsel .... testified to the preparations undertaken for trial. Included among these preparations was a review of psychiatric documents presented to counsel by petitioner and court-appointed psychiatrists, as well as consultations with a reputable psychiatrist employed by the defense.

> After several meetings with the petitioner, the defense psychiatrist indicated to defense counsel that he could not testify in favor of a defense of extreme emotional disturbance.... The psychiatrist attributed petitioner's erratic behavior to a history of alcoholism. He would not offer support for a claim of extreme emotional disturbance.

> .... *Given defense counsel's full investigation,* his election not to call a defense psychological witness can be considered a sound strategic decision. There is no evidence that counsel was ineffective in preparation. Failure to

obtain all of petitioner's medical records had no effect on the adequacy of the defense psychiatrist's opinion or defense counsel's opinions.

*Graham I,* 2003 WL 23185715, at *5–6 (emphasis added). After remand, research and presentation by appointed counsel compels a contrary conclusion. When recalled to the stand during the post-remand evidentiary hearing, petitioner's state trial counsel testified that he knew of petitioner's self-reported history of psychiatric admissions, including treatment in the months before the killing, but that he failed to acquire records of that history or to elicit testimony about them from any witness at trial, or any expert. *See* 3/17/10 Hr'g Tr. at 190–192; see also id. at 177–78, 179, 181, 182, 185, 188, 189.

State trial counsel had considered extreme emotional disturbance to be a possible defense from the time of petitioner's arraignment; he apparently intended to obtain records of defendant's prior admissions to help him assess whether such a defense was viable. *See id.* at 167, 179–181. But he never carried out this necessary plan.

By contrast, petitioner's habeas counsel was able to obtain decisive, voluminous records by following leads contained in the 730 report available before the trial. *See* Exhs. C, M–G Pet. Supp. Br. dated 12/07/07 (psychiatric records); 3/5/10 Hr'g Tr. at 16, 191.

State trial counsel said he recalled speaking informally about a psychiatric defense with a psychiatrist, Dr. Eshekanazi. There is, however, no indication in the record that Dr. Eshekanazi was ever assigned, retained, or consulted about a possible psychiatric presentation or defense, or asked to prepare a report. *Id.* at 171, 192–94.

For the past twenty-five years, Dr. Eshekanazi's secretary has kept records of his court cases; petitioner's is not among them. *See* Declaration of Dr. Eshekanazi, dated Sept. 9, 2008 ("Eshekanazi Decl., 9/9/08"), at ¶ 2, D.E. No. 126–4 (filed 5/28/10); 3/17/10 Hr'g Tr. at 181–82; 225. The conclusion is clear: petitioner did not show Dr. Eshekanazi any psychiatric records of the petitioner.

In a declaration submitted without objection after the post-remand hearing, Dr. Eshekanazi noted the importance of reviewing a defendant's records in assessing a potential psychiatric defense:

> When evaluating a defendant to determine if he or she has a psychiatric defense, I always want to have as much information about the individual as possible. I always tell the lawyer, "The more information I have, the better off I am. I don't want to be embarrassed in court." Thus, I always want to have, among other things, the defendant's prior psychiatric records.

Eshekanazi Decl., 9/9/08, at ¶ 3. Dr. Eshekanazi's view is consistent with testimony of the two forensic psychiatrists at the post-remand hearing. *See* 3/5/10 Hr'g Tr. at 43–44 (testimony of Dr. Bardey); *id.* at 14 (testimony of Dr. Goldsmith). It is not conceivable that Dr. Eshekanazi, if consulted, would not have asked for petitioner's psychiatric records, and that, if he were consulted, he would have nothing in his files related to petitioner's case. He was never consulted.

Based on the full record, it is now found beyond a reasonable doubt that petitioner's state trial counsel never sought petitioner's psychiatric records, that such records would have been readily obtainable had he sought them, and that he never consulted meaningfully with Dr. Eshekanazi or any other psychiatrist about whether petitioner had a viable psychiatric presentation or defense.

 Given indisputable proof of state defense counsel's failure to seek the rec-

ords or advice supporting a psychiatric presentation or defense, it cannot be said that petitioner was afforded constitutionally adequate representation during his criminal trial. While "[r]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste," *Rompilla*, 545 U.S. at 383, 125 S.Ct. 2456, no such line was drawn in this case. State trial counsel failed to follow through on basic steps that even he deemed salient to an assessment of a potential psychiatric defense. Given that lack of investigation, counsel's decision not to call an expert psychiatric witness on petitioner's behalf cannot be excused as strategic. *See Pavel v. Hollins*, 261 F.3d 210, 216–18 (2d Cir.2001).

Petitioner has met his burden of showing that his state counsel's failure to investigate his psychiatric history, given the circumstances of this case, was so unprofessional as to be constitutionally deficient. *See Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

### 2. Prejudice

██ As to the second issue, the record is equally clear that petitioner was prejudiced by counsel's deficient performance. *See id.* at 466 U.S. at 694, 104 S.Ct. 2052.

Had counsel performed adequately he would have sought and obtained records of petitioner's prior psychiatric admissions and provided them to a court-appointed or privately retained professional to determine if defendant had a viable psychiatric presentation or defense. Based on the full record after remand, it is found probable by a clear and convincing evidence standard that if appropriate steps had been taken by trial counsel, a forensic psychiatrist or similar professional would have concluded that petitioner was mentally ill and was suffering from extreme emotional disturbance at the time of the killing.

Although an absolute defense of extreme emotional disturbance may not be available with respect to the deliberate indifference murder charge, *see People v. Fardan*, 82 N.Y.2d 638, 645, 607 N.Y.S.2d 220, 628 N.E.2d 41 (1993), it was available as an affirmative defense to second-degree intentional murder, *see People v. Suarez*, 6 N.Y.3d 202, 216, n. 9, 811 N.Y.S.2d 267, 844 N.E.2d 721. *Compare* N.Y. Penal Law § 120.25(1) *with* N.Y. Penal Law § 120.25(2). It is also probable, by a clear and convincing standard, that a jury would have been deeply troubled by available psychiatric evidence in determining whether the defendant was guilty of killing as a result of deliberate indifference. *Mens rea* is required for both types of homicide. A warped mind would have affected the state of defendant's mentation necessary for a finding of guilt for each of the crimes charged.

Based on the state record, it seems likely that the jury convicted petitioner of depraved indifference rather than intentional murder because it believed that the former indicated less culpability than the latter, with the likelihood of a lesser sentence. Since the jury was not informed that the penalties were the same, this misapprehension was understandable. Whether or not they were so informed, it is probable by a clear and convincing standard that any jury would consider, and would be affected in its deliberations by, the extensive available psychiatric evidence in determining whether petitioner was guilty of depraved indifference murder, the charge on which he was convicted.

It is probable by a clear and convincing evidence standard that, but for counsel's failure to obtain and present the readily available and highly relevant psychiatric records and failure to present favorable testimony from a psychiatrist, the result of defendant's trial might well have been different. The state trial "cannot be relied on as having produced a just result,"

*Strickland,* 466 U.S. at 686, 104 S.Ct. 2052 and any "confidence in the outcome" has been "undermined," *id.* at 694, 104 S.Ct. 2052. Petitioner has met his burden of showing that he was prejudiced at trial by counsel's constitutionally deficient performance.

This decision is also supported by petitioner's claim that counsel's performance was deficient at sentencing. Whether or not the psychiatric history should, under state law, have been submitted at trial, it surely bore on the appropriateness of the sentence. It is improbable by a clear and convincing standard that the state trial judge would have ignored petitioner's psychiatric history at sentencing. It is highly unlikely that he would have said: "I heard nothing at trial that would make me understand why you did what you did or what it is that made you so angry.... You have provided us with no explanation of what happened." 5/29/96 Sentencing Transcript (Exhibit F to Petitioner's Supplemental Brief in Support of Petition for Writ of Habeas Corpus, dated Dec. 7, 2007), at 16–17. This failure on counsel's part at sentencing furnishes an independent ground for granting the writ. The sentencing phase is crucial. The maximum sentence was imposed. *See id.* at 17. It is likely by a clear and convincing standard that a lesser sentence would have been imposed if the sentencing court had had the available psychiatric history before it.

The question of whether state trial counsel performed adequately with regard to the evaluation of petitioner's competency to stand trial need not be considered. *See Graham I,* 2003 WL 23185715 *7–8.

### 3. Presentation of Claim

■ Petitioner's ineffectiveness claim is properly before this court for a decision on the merits. Claims raised in petitioner's post-remand brief are substantially the equivalent of those raised in petition-er's original *pro se* application. No separate application to the Court of Appeals for the Second Circuit for permission to bring a second petition is required.

The petition need not be dismissed as containing unexhausted claims. Nothing in petitioner's briefing or presentation after remand alters this court's prior determination that petitioner's claims were fairly presented to the state court. *See Graham I,* 2003 WL 23185715 *6–8; *see also Vasquez,* 474 U.S. at 260, 106 S.Ct. 617; *Keane,* 329 F.3d at 294.

### 4. Exhaustion and Second Petition— A Procedural Conundrum

A puzzling procedural problem is posed by what could be argued to be two separate contentions by petitioner respecting the psychiatric issue or issues as they related to counsel's inadequacy. *First,* in the original petition, the claim appeared to be a failure to contest petitioner's capacity to stand trial. *Second,* after post-mandate counsel took over management of the petition, the claim was that, assuming petitioner was capable of standing trial, the trial should have been conducted using the available psychiatric materials as a defense, or as a reason for finding lack of *men rea,* or to sentence more compassionately.

If the second and the first claims are essentially different forms of the same claim, then the analysis in this memorandum is acceptable. But, if they are essentially separate claims, this reasoning does not hold up. First, the claim would not have been exhausted and the state courts should have the opportunity to pass on it before it is presented to the federal courts. Second, it would be a new claim and the Court of Appeals would have to authorize the district court to rule on it in a second petition.

Were they deemed separate claims by the panel on the appeal from *Graham I's*

judgment, the Court of Appeals in *Graham II* would have affirmed dismissal, but on a ground different from that relied on by the district court: petitioner would have required state exhaustion and a second petition on the new claim. The Court of Appeals did not take that position: it remanded for an evidentiary hearing on the merits of the clarified ultimate claim now being decided by the district court. The conclusion that follows is that the Court of Appeals decided in *Graham II* that there was one claim.

Even if it found merit in respondent's contention that there were two claims, not one, the Court of Appeals might have decided to cut through one of AEDPA's Gordian Knots and moved the case towards a conclusion that saved years of litigation. Were it to have accepted respondent's contention that there were two claims, the case would have gone back for exhaustion, resulting in the state's setting aside or not setting aside the conviction. If the state set aside the conviction, that would be the end of the matter. But, if it refused to set it aside, the petitioner would need to apply to the Court of Appeals for the Second Circuit for permission to bring a second petition.

If the Court of Appeals for the Second Circuit denied permission, that would be the end of the matter. But, if, as is more likely on these facts, it granted permission to bring a second petition, the district court would have held the same hearing it has just provided post-remand and granted the petition for the reasons already stated in this memorandum.

Whatever way the conundrum is analyzed, the district court's present duty seems clear under the mandate: hold the evidentiary hearing, and, if the petitioner's present contentions are established, grant the writ.

In the final analysis, the form of the remand is just and appropriate. All of the

charged failures of trial counsel arose from a lack of an elementary inquiry about petitioner's longstanding and serious mental problems: counsel failed to follow up on clear leads by obtaining past records of psychological problems. Had he done this fundamental work of a competent trial counsel, his failures at pretrial as to the competence hearing, at trial as to the lack of *means rea*, and at sentencing as to a strong basis for compassion, would have easily been avoided. This basic mistake was seriously prejudicial to petitioner.

### B. Other Claims

Other claims in petitioner's application for a writ of habeas corpus have no merit. *See Graham I*, 2003 WL 23185715, at *8–9; *see also Sumner v. Mata*, 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("[A] court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit[.]"). This opinion complies with *Miranda v. Bennett*, 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure.

### IV. Conclusion

The petition for a writ of habeas corpus is granted on the ground of ineffective assistance of state trial counsel. The prisoner shall be released unless within sixty days the state commences prosecution or takes other appropriate action. This judgment is stayed pending completion of any appeal.

No certificate of appealability is granted with respect to petitioner's remaining claims. As to them, he has made no substantial showing of the denial of a constitutional right. Petitioner has the right to seek a certificate of appealability on these claims from the Court of Appeals for the Second Circuit.

The district court is grateful for the highly professional assistance of counsel for both petitioner and respondent.

SO ORDERED.